FILED
2012 Jun-15  AM 08:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| **v.** | ) | **2:10-cv-02627-WMA** |
| | ) | |
| | ) | |
| **THE MCPHERSON COMPANIES , INC.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Equal Employment Opportunity Commission, submits this Memorandum Brief in support of its Motion for Partial Summary Judgment on the Plaintiff's Retaliation Claim and Defendant's Affirmative Defenses.

## I.  INTRODUCTION

The Plaintiff Equal Employment Opportunity Commission ("EEOC" or the "Commission") brings this action under its statutory authority to initiate cases to enforce the provisions of Title VII of the Civil Rights Act of 1964. The Commission filed this action on behalf of the public interest and John Doe

("Doe")[1], the Charging Party, alleging Defendant McPherson Companies, Inc.,

("Defendant") violated Title VII of the Civil Rights Act of 1964, *as amended*, 42

U.S.C. Sections 2000e *et seq*. and the Civil Rights Act of 1991, 42 U.S.C. Section

1981a. The Commission asserts two claims: (1) unlawful sex discrimination in

violation of Section 703 of Title VII, 42 U.S.C. Section 2000e-2(a)(1)(2); and (2)

unlawful retaliation against Doe for Doe's opposition to discrimination, including

but not limited to his discharge from employment, in violation of  Section 704 of

Title VII, 42 U.S.C. Section 2000e-3(a). Specifically, Plaintiff's first claim alleges

Defendant violated Title VII by subjecting Doe to a hostile work environment

based on sex, in the form of unlawful sexual stereotyping, a recognized theory of a

hostile work environment claim. Defendant and Doe's supervisors regarded Doe as

not meeting their expectation of what a man should be, of being not masculine

enough and being overly feminine in his behavior. Plaintiff's second claim alleges

Defendant violated Title VII by engaging in unlawful retaliation against Doe for

engaging in Title VII protected opposition to discrimination.

Pursuant to Federal Rule of Civil Procedure 56, the Commission moves this

Court for: (1) partial summary judgment, on the issue of Defendant's liability,

concerning the  Commission's Title VII retaliation claim; and (2) summary

judgment on the Defendant's following affirmative defenses: Defendant's First

---

[1] In the lawsuit, Charging Party is referenced as "John Doe."

through Fifteenth, Seventeenth through Twenty-Fourth, Twenty-Seventh, and Twenty-Eighth affirmative defenses.

## II.   PLAINTIFF'S CASE OVERVIEW

Doe worked for Defendant from August 2004 until on or about February 8, 2008, the date of his unwarranted and involuntary discharge. Defendant is a full service petroleum products and services company. Doe worked in Defendant's warehouse in Trussville, Alabama, as Supervisor of the Renew Department.

Doe's performance record with Defendant was commendable. Doe never received a performance evaluation below "meets expectations." Doe consistently received pay increases from Defendant.  Lamar Tipton, Renew Blend Supervisor, was Doe's first level supervisor. Tipton reported to Mike McPherson ("Mike"), Assistant Operations Manager, who reported to Randy Painter, Facility Operations Manager.

### 1.   Sexually Hostile Work Environment

Mike and Painter sexually harassed Doe.

Doe is not homosexual.  Mike and Painter treated Doe as feminine.  Doe is at least average height and weight at 6 feet tall and nearly 210 pounds; however, his dress and appearance preferences motivated his supervisors to treat him as being insufficiently masculine.  For example, Doe: (1) wore hoop earrings in both ears; (2) had blond highlight/streaks in his hair and wore it standing up; (3)

3

occasionally wore "flip-flop" shoes into work, on his way to the dressing room where he changed into his work clothes and work boots; (4) was exceptionally clean and always took measures to appear clean and neat; and (5) maintained professional posture in his bearing.  In addition, Doe is a trained artist, focusing on painting children's rooms.  Doe was the only male in the workplace whose appearance and demeanor was unique in the manner described.  Accordingly, Doe simply "stood out" from the other male employees and his interests were different than his male supervisors, managers, and coworkers.

Mike and Painter targeted Doe for harassment. Doe did not engage his harassers in reciprocal sexual name calling, harassment, or banter. Mike and/or Painter, Defendant's managers, harassed Doe by calling him the names listed below, and/or stating to him, and/or taking such actions against him:

1.      You act and walk like a woman or girl;

2.      You are feminine;

3.      If you just change how you carry yourself, you will not have this problem;

4.      If you would just act more like us - watch football, go hunting: you would not have these problems;

5.      Physically placing a deer's testicles and two chopped-off deer legs on Doe's work desk and causing the desk to be covered in blood;

6.      Whistling at Doe, in the offensive manner that some men may whistle at women;

7.    Calling Doe: (a) Fag; (b) Faggot; (c) Fairy; (d) Fag-Fairy; (e) Queer; (f) Ass-breath; (g) Dick-sucker; (h) Homo; (i) Gay-Boy; (j) Dick-Sucking-Queer; (k) Mother-Fucking-Queer; and (l) Bitch.

8.    You are just like a Fag Fairy Puff;

9.    You have had plenty of nuts in your mouth before.

10.    Anyone who pulls their pants down and you are ready to start sucking them off; combined with a demonstration by Mike of how Doe's head would allegedly move, bobbing on a person's penis;

11.    Everyone needed to pull up their pants because the fag-fairy (Doe) was present;

12.    "Doe, did the battery go dead on your butt plug?"

13.    "You are not worth a damn unless your ass is vibrating;" and

14.    "I will take you behind a tank and have sex with you."

Doe perceived Mike and Painter's comments and actions as "cutting down his masculinity." Doe viewed Mike and Painter as thriving on the number of people, including Doe's co-workers, who heard their insults against him; i.e. the more people, the better.

## 2.    Title VII Retaliation

Doe complained of the harassment to Tipton, Mike, Painter, and Anna Marie Chapman, Director of Human Resources. Doe met with Chapman on multiple occasions. Defendant, after or contemporaneously with Doe's meetings with Chapman: (1) required Doe to take off  work for two days without pay; (2) required him to take a drug test; (3) removed him from his position as Supervisor

of Renew Department; and (4) assigned him more dangerous and less desirable work assignments. Subsequently, on January 22, 2008, Defendant subjected Doe to his only disciplinary action with Defendant: a written first warning for absenteeism, approximately seventeen days prior to his discharge. Defendant did not follow its policy of progressive discipline. Prior to such discipline, Doe had an unblemished disciplinary and performance record for his entire employment with Defendant.

On or about February 8, 2008, Defendant discharged Doe in a meeting with Chapman and Mike Bedford, Defendant's Vice President of Operations. Defendant presented a severance letter to Doe, which included a release of all claims, a severance check, and a check for wages and benefits owed to Doe. Doe rejected the severance check and did not sign the release form.  Chapman became very angry and Bedford asked her to leave the meeting.

## III.   STATEMENT OF DEFENDANT'S ALLEGED MATERIAL FACTS (TAKEN AS UNDISPUTED FOR MOTION IN ISSUE)

The following facts are set forth as Defendant's alleged facts, taken as undisputed only for Plaintiff's motion asserted herein. The sole purpose for addressing these facts as undisputed is that virtually all said facts are derived from Defendant and all facts must be construed in favor of the non-movant in summary

judgment proceedings. Based on such facts, the Commission's motion is due to be granted on all issues raised in said motion.

### 1. <u>Defendant and Key Officials</u>

1.      Defendant is one of the largest independent oil lubricant distributors in the nation.[2] The entity has locations in Alabama, Florida, Georgia, Tennessee, and Mississippi.[3] The company's headquarters are in Trussville, Alabama. As of January 5, 2012, Defendant had approximately 270 employees.[4]

2.      Charles McPherson is the founder of the Defendant. Charles (Ken) McPherson, Jr. is the President.[5] Mike McPherson ("Mike") is Ken McPherson's cousin.[6]

3.      Defendant hired Anna Marie Chapman, a female, as Human Resources Director on June 1, 2007. She is the leading human resources official for Defendant.[7]

4.      Chapman reported to Brad Gray, Executive Vice President.[8]

5.      Mike Bedford served as Vice President of Operations for Defendant from 2006-2010.[9]

---

[2]      Ex.1    [Web Page of Defendant]
[3]      Ex. 1   [Web Page of Defendant]
[4]      Ex. 2   [Dep. (Ken McPherson)    14:21-22;15:2-5]
[5]      Ex. 2   [Dep. (Ken McPherson)    5:5-8:5]
[6]      Ex. 2   [Dep. (Ken McPherson)    11:4-8]
[7]      Ex. 3   [30(b)(6) Dep. (Chapman) 7:3-15]
[8]      Ex. 3   [30(b)(6) Dep. (Chapman) 7:16-19]
[9]      Ex. 4    [Dep. (Bedford)  9:12-10]

6.     Doe worked for Defendant from August 16, 2004-February 8, 2008, when Defendant discharged him involuntarily.[10] Doe worked in the Renew Department.[11] The Department processes dirty oil into clean and reusable oil to be sold.[12] On or about February 8, 2008, Chapman gave Doe a Separation Agreement and General Release.  Doe refused to sign the release of his claims.[13]

7.     As of September 19, 2005, Doe reported directly to Lamar Tipton, Renew Blend Supervisor.[14] Tipton reported to Mike, Assistant Operations Manager, who reported to Painter, Facility Operations Manager.[15] Painter reported to Bedford, Vice President of Operations. [16]

8.     Tipton, Mike, and Painter worked in the warehouse with Doe. Tipton, Mike, and Painter held higher positions of authority than Doe and had the ability to direct Doe to perform certain duties.[17]

9.     Tipton had daily contact with Doe.[18] Tipton had the authority to issue Employee Counseling Reports to Doe, including disciplinary reports. [19]

---

[10]    Ex  3    [30(b)(6) Dep. (Chapman) 25:11-20]
[11]    Ex. 5    [Dep. (Doe) 103:12-23]
[12]    Ex. 6    [Dep. (Tipton) 11:8-11]
[13]    Ex. 3    [30(b)(6) Dep. (Chapman) 106:14-109:2]
[14]    Ex. 6    [Dep. (Tipton)  20:4-9]
[15]    Ex. 7    [Dep. (Mike)  13:19-14:16; 15:22-16:1-9]
[16]    Ex. 3    [30(b)(6) Dep. (Chapman) 30:2-6]
[17]    Ex. 3    [30(b)(6) Dep. (Chapman) 31:20-23; 32:1-3]
[18]    Ex. 6    [Dep. (Tipton)  44:17-20]
[19]    Ex. 6    [Dep. (Tipton)  58:6-12]

10.    Tipton has known Doe for approximately (25) twenty-five years and his opinion of Doe's truthfulness and credibility is that he is "a pretty honest guy."[20]

11.    Mike had the authority to: (a) take disciplinary action against Doe; and (b) direct Tipton to take disciplinary action against Doe.[21]

12.    Painter had the authority to: (a) take disciplinary action against Doe; and (b) direct Tipton to take disciplinary action against Doe.[22]

### 2.    **Training**

13.    Defendant never explained to Tipton: (a) the type of conduct that constitutes sexual harassment when a man's conduct is asserted to be offensive against another man; or (b) the meaning of equal employment opportunity (EEO) retaliation.[23]

14.    Tipton does "not remember" receiving any training as to how to train other employees concerning unlawful sex harassment involving a male's conduct against another male.[24]

---

[20]    Ex. 6    [Dep. (Tipton)    7:1-4; 45:25; 46:1-4]
[21]    Ex. 7    [Dep. (Mike)    15:19-16:3]
[22]    Ex. 8    [Dep. (Painter)    18:10-20]
[23]    Ex. 6    [Dep. (Tipton)    19:5-14]
[24]    Ex. 6    [Dep. (Tipton)    17:2-7]

15.     Tipton never received training on how to: (a) resolve an internal EEO complaint;[25] (b) preserve evidence;[26] (c) maintain an investigation file for an EEO complaint; [27] or (d) respond to an EEOC complaint.[28]

16.     Mike, as Assistant Operations Manager, "does not know" if had received any training as to: (a) the definition of unlawful sexual harassment when it involves a man engaging in offensive conduct toward another man; (b) the procedure for responding to sexual harassment complaints involving a man's offensive conduct toward another man; or (c) how to preserve evidence when an employee files an internal complaint of unlawful sexual harassment involving a male's conduct toward another male.[29]

17.     Concerning internal complaints of sexual harassment involving offensive conduct by a man toward another man, Mike did not receive any training how to respond to such complaints.[30]

18.     Mike never received any training as to how to investigate effectively a sexual harassment or retaliation complaint.[31]

---

[25]     Ex. 6     [Dep. (Tipton)  18:6-7]
[26]     Ex. 6     [Dep. (Tipton)  18:16-19]
[27]     Ex. 6     [Dep. (Tipton)  18:20-19:1]
[28]     Ex. 6     [Dep. (Tipton)  19:2-4]
[29]     Ex. 7     [Dep. (Mike)   17:22-18:5; 18:14-20; 18:21-19:4]
[30]     Ex. 7     [Dep. (Mike)   18:6-13]
[31]     Ex. 7     [Dep. (Mike)   21:10-13]

19.   Mike did not train any of the employees he supervised as to: (a) the definition of unlawful harassment involving a male against another male; (b) how to respond to an internal complaint of sexual harassment involving a male against a male; (c) how to respond to an internal complaint of equal employment opportunity retaliation. [32]

20.   Mike never provided any training to Lamar Tipton concerning unlawful sexual harassment or equal employment opportunity retaliation.[33]

21.   Prior to Doe's discharge in February 2008: (a) Mike's training concerning sexual harassment and retaliation consisted of receiving Defendant's Employee Handbook in 2005; and (b) Mike did not attend training on sexual harassment or retaliation other than receiving the handbook.[34]

22.   Painter did not provide any training to employees under his supervision concerning: (a) sexual harassment or a hostile work environment based on sex involving offensive conduct by a male toward another male; or (b) EEO retaliation.[35]

23.   Painter did not have any understanding as to the meaning of Title VII.[36]

---

[32]   Ex. 7   [Dep. (Mike)   19:17-22; 20:3-14]
[33]   Ex. 7   [Dep. (Mike)   24:6-11]
[34]   Ex. 7   [Dep. (Mike)   23:7-19]
[35]   Ex. 8   [Dep. (Painter)  33:5-17]
[36]   Ex. 8   [Dep. (Painter)  31:4-6]

24.    Painter received the Defendant's Handbook dated January 1, 2005; however, he never received any training concerning the Handbook.[37]

25.    Concerning Defendant's Sexual Harassment Policy, Painter initially testified that because there is no acknowledgment signed by him that he received the policy, it is possible he did not receive the policy.[38] Subsequently, Painter testified he received the policy but admitted he has no idea when he received it or when he read the policy.[39]

26.    At the time of Doe's complaints to Chapman concerning Mike and Painter, Defendant did not have any knowledge that Mike and/or Painter ever received any training in same sex discrimination or same sex harassment.[40]

27.    Prior to Doe's complaint to Chapman, Defendant does not have any knowledge that during the tenure of Chapman, since June 1, 2007, Lamar Tipton, Mike, or Painter had been given training as to: (a) the definition of unlawful same sex harassment; (b) how to develop a comprehensive anti-harassment same-sex policy; (c) how to conduct an effective investigation of a same sex harassment charge; (d) how to resolve a complaint of same-sex harassment; (e) preserving evidence   and the investigation file;[41] (f) how to respond to an administrative

---

[37]     Ex. 8    [Dep. (Painter)  34:8-23; 85:1-11]
[38]     Ex. 8    [Dep. (Painter)  87:10-14; 89:1-9]
[39]     Ex. 8    [Dep. (Painter)  89:22-23;90:1; 91:6-9]
[40]     Ex. 3    [30(b)(6) Dep. (Chapman) 112:7-17]
[41]     Ex. 3    [30(b)(6) Dep. (Chapman) 127-18-23; 128:1-23; 129:1-17]

complaint of same-sex harassment; or (g) how to train   other employees concerning same-sex harassment charges.[42]

28.   Defendant, via Chapman, did not give any same-sex discrimination or harassment training to Defendant employees prior to date of Doe's discharge.[43]

29.   Defendant did not provide Tipton, Mike, and Painter any training concerning equal employment opportunity retaliation prior to June, 2008, approximately (4) four months after Doe's discharge. [44]

31.   Defendant's   performance   evaluation   process   during   Doe's employment involved Defendant providing evaluations around the first of the year for the prior year. Doe received an evaluation every year. Painter did not know why Defendant did not provide  [Doe] a performance evaluation for the year 2007 and present such evaluation to Doe in January or February of 2008.[45]

### 3.   **Harassment**

32.   Mike "probably" called Doe a: (a) queer; [46] and (b) bitch.[47] Doe does not remember the number of times he called Doe a queer and/or bitch.[48]

---

[42]   Ex. 3   [30(b)(6) Dep. (Chapman) 130:1-11]
[43]   Ex. 3   [30(b)(6) Dep. (Chapman) 23:7-19]
[44]   Ex. 3   [30(b)(6) Dep. (Chapman) 133:18-23;134:1-15]
[45]   Ex. 8   [Dep. (Painter) 79:20-80:1-2; . 80:11-13; 80:10-13; 82:3-11]
[46]   Ex. 7   [Dep. (Mike) 73:5-10]
[47]   Ex. 7   [Dep. (Mike) 80:10-15]
[48]   Ex. 7   [Dep. (Mike) 73:5-10]

30.    Mike "possibly" called Doe a:  (a) fag; [49] (b) mother fucking queer; [50] (c) faggot; [51]  (d) dick; [52] and (e) homo or something similar to such comment.[53]

31.    Mike does not recall the number of times he called Doe a fag, mother fucking queer, faggot, dick, or homo or something similar to such comment.[54]

32.    Mike stated to Doe, when another person was adjusting his pants, "[blank] undoes his pants and poof, you appeared like a fairy. [55]

33.    Defendant found Mike had called Doe a fag, faggot, queer, ass-breath, and mother-fucking queer, and made the comment, unrelated to Doe, "I will take you behind a tank and have sex with you." [56]

34.     Mike observed deer testicles on Doe's desk where the deer had two chopped off legs. Mike did not take any action after such observing the deer parts.[57]

35.    Painter called Doe a fag, faggot, possibly, a queer. [58]

---

[49]    Ex. 7    [Dep. (Mike) 73:14-19]
[50]    Ex. 7    [Dep. (Mike) 75:1-2]
[51]    Ex. 7    [Dep. (Mike) 71:7-11]
[52]    Ex. 7    [Dep. (Mike) 74:2-5]
[53]    Ex. 7    [Dep. (Mike) 74:10-15]
[54]    Ex  7    [Dep. (Mike) 73:14-19; 75:1-2; 71:7-11;74:2-5; 74:10-15]
[55]    Ex. 7    [Dep. (Mike) 78:8-23; 79:1-6]
[56]    Ex. 3    [30(b)(6) Dep. (Chapman) 68:3-14]
[57]    Ex. 7    [Dep. (Mike) 76:12-77:1]
[58]    Ex. 3    [30(b)(6) Dep. (Chapman) 67:11-68:2]; Ex. 10 (Dep. Ex. 1, Plaintiff's 30(b)(6) Notice).

### (a)    Doe's Complaints and Discipline of Harassers

36.    Doe complained to Mike regarding the comments made to him. [59] Mike understood Doe's complaint: (a) related to comments directly against Doe; and (b) include Mike's and Painter's comments to Doe.[60] Doe complained to Mike that the comments needed to stop, Doe was tired of them, and it was getting old.[61]

37.    Mike, upon receiving Doe's complaints, did not report such complaints to Chapman.[62] Defendant's sexual harassment policy provides:

> Any supervisor or manager who becomes aware of possible sexual or other unlawful harassment should promptly advise the Human Resources Manager or any member of management who will handle the matter in a timely and confidential manner.[63]

37.    Doe, prior to leaving Defendant's employment, told Tipton that he had contacted an attorney concerning Doe's employment rights.[64]

38.    Doe met with Chapman on October 30 or 31, 2007, and two or three occasions thereafter.[65] Defendant did not direct Doe to attend such meetings.[66]

39.    Concerning her meetings with Doe, Chapman cannot recall if Doe informed her that he had retained an attorney regarding his employment issues.[67]

---

[59]    Ex. 7    [Dep. (Mike) 45:5-8]
[60]    Ex. 7    [Dep. (Mike) 46:13-22]
[61]    Ex. 7    [Dep. (Mike) 70:11-17]
[62]    Ex. 6    [Dep. (Mike) 77:2-8]
[63]    Ex. 1C   [C=confidential]
[64]    Ex. 6    [Dep. (Tipton) 79:4-10]
[65]    Ex. 3    [30(b)(6) Dep. (Chapman) 52:6-13]
[66]    Ex. 3    [30(b)(6) Dep. (Chapman) 53:4-6]

40.     Chapman, in one of her meetings with Doe, asked him if he had a tape recorder, and he took it out of his pocket and placed it on the table. [68]

41.     Doe complained to Chapman about Mike and Painter calling him fag, faggot, and fag fairy.[69] Doe complained to Chapman that Mike said to him: (a) poof, pants come down, and there is the fag fairy;[70] and (b) "someone pulls his pants down to suck him off (sic)."[71]

42.     Doe complained to Chapman that Painter said to him: (a) "you ought to know what a nut is"[72] and (b) in front of Tipton, "battery on butt plug run down; cannot get his job done without his ass (sic) vibrating."[73] Furthermore, Doe complained management singled him out; explaining he did not fit in with the group in which he was working.[74]

43.     Near the end of October, 2007, Painter asked Chapman: "what point should we send [Doe] for his random drug test?"[75] Doe passed the drug test.[76] Doe had only been drug tested on one other occasion concerning his employment with

---

[67]     Ex. 3   [30(b)(6) Dep. (Chapman) 57:11-15]
[68]     Ex. 3   [30(b)(6) Dep. (Chapman) 57:22-23; 58:1]
[69]     Ex. 3   [30(b)(6) Dep. (Chapman) 43:1-8; 45:4-9]
[70]     Ex. 3   [30(b)(6) Dep. (Chapman) 64:23-65:2]
[71]     Ex. 3   [30(b)(6) Dep. (Chapman) 154:22-155:13]
[72]     Ex. 3   [30(b)(6) Dep.  (Chapman) 155:20-156:4]
[73]     Ex. 3   [30(b)(6) Dep.  (Chapman) 156:18-20]
[74]     Ex. 3   [30(b)(6) Dep.  (Chapman) 63:16-23]
[75]     Ex. 3   [30(b)(6) Dep.  (Chapman) 63:2-5]
[76]     Ex. 3   [30(b)(6) Dep.  (Chapman) 54:12-13]

Defendant; on or about August 11, 2004, in a pre-employment drug test.[77]

Defendant offered and Doe accepted to take two days off from work without pay.[78]

44.      Defendant understands how the offensive comments by Mike and Painter would make Doe feel "uncomfortable", as well making him feel "uncomfortable" when repeated more than one time by his supervisors.[79]

45.      Chapman, after Doe's complaints and prior to his discharge, talked to Painter and Mike about Doe's complaints. Chapman does not recall if Painter or Mike informed Chapman that Doe had complained to them concerning the comments they were making to Doe and asked them to stop making such comments.[80]

46.      Defendant disciplined Tipton, Mike, and Painter for their treatment of Doe. [81]. The reason for such discipline was: "they engaged in bantering with Doe" and the "comments made could be about same-sex."[82] The conduct was "inappropriate." [83]

47.      Defendant describes the discipline imposed on Mike and Painter, for their treatment of Doe, as:

---

[77]      Ex. 5      [Dep. (Doe) 105:13-22]
[78]      Ex. 3      [30(b)(6) Dep.   (Chapman) 59:19-23; 60:1-23; 61:1-3]
[79]      Ex. 3      [30(b)(6) Dep.   (Chapman) 164:21-23; 165:1-8]
[80]      Ex. 3      [30(b)(6) Dep.   (Chapman)  48:15-19]
[81]      Ex. 3      [30(b)(6) Dep.  (Chapman) 65:19-20; 130:12-23; 131:1-3]
[82]      Ex. 3      [30(b)(6) Dep.  (Chapman) 66:1-5 66:19-20]
[83]      Ex. 3      [30(b)(6) Dep.  (Chapman) 67:1-4]

Q.   . . . . Anyone found to be engaging in any type of **unlawful discrimination** will be subject to disciplinary action up to and including termination of employment? Do you see that?

A.   Yes.

Q.   Was that the type of discipline that McPherson Companies imposed on Randy Painter and Mike McPherson?

A.   Yes.[84]

48.   Defendant's decision to discipline Mike and Painter was made by Chapman and Brad Gray, Executive Vice President.[85] Also, Defendant disciplined Lamar Tipton. Defendant's discipline of Tipton, Mike, and Painter consisted of a **verbal counseling**. Tipton's discipline was of the same type, verbal counseling, and for the same reasons as the discipline imposed on Mike and Painter.[86]

49.   Defendant never disciplined Doe for any improper bantering. Defendant does not have a single document which sets forth any type of bantering engaged in by Doe.[87]

### 4.   Defendant's Disciplinary Practices

50.   Defendant's policy is to use progressive discipline in the disciplinary process.[88] The policy consists of a verbal warning, first written warning, second written warning with a suspension, and final warning.[89]

---

[84]   Ex. 3   [30(b)(6) Dep.   (Chapman) 113:4-13]
[85]   Ex. 3   [30(b)(6) Dep.   (Chapman) 19:23; 60:1-10; 60:19-23; 61:1-3]
[86]   Ex. 3   [30(b)(6) Dep.   (Chapman) 130:12-23; 131:1-3]
[87]   Ex. 3   [30(b)(6) Dep.   (Chapman) 65:16-18;167:19-23]

51.     Defendant uses the Employee Counseling Report for disciplinary actions. The Report sets forth the (a) Nature of Conduct, (b) Discussion; and (c) Disciplinary Action. There are six items under <u>Nature of Conduct</u>: (a) tardiness; (b) quality of work; (c) insubordination; (d) safety; (e) absenteeism; (f) quantity of work; (g) policy violation; and (h) other. Moreover, the Report provides for the following forms of <u>Disciplinary Action</u>: (a) verbal warning; (b) first written warning; (c) second written warning; (d) suspension for the designated number of days; and (e) termination.[90]

52.     Defendant verbally counseled Tipton, Mike, and Painter for their treatment of Doe, but did not use the Employee Counseling Report.

53.     Defendant uses the Employee Counseling Report to issue verbal warnings, as reflected by Defendant's verbal warning to [SUPERVISOR # 1], unrelated to Doe and issued on a Report.[91] Defendant issued an Employee Counseling Report to [SUPERVISOR # 1], dated September 19, 2008. The disciplinary action was a designated "<u>verbal warning</u>" for conduct relating to "<u>quantity of work</u>." [92] Defendant did not discharge SUPERVISOR # 1.[93]

---

[88]     Ex. 7   [Dep. (Mike) 32:12-22]
[89]     Ex. 7   [Dep. (Mike) 30:22-31:13. 31:3]
[90]     *See e.g*., Ex. 2C; Ex. 3C; Ex. 4C
[91]     Ex. 3C
[92]     Ex. 3C
[93]     Ex. 6   [Dep. (Supervisor # 1), 87:3-5]

54.    Defendant disciplined [MANAGER and SUPERVISOR # 2], unrelated to Doe, by using progressive discipline, and an Employee Counseling Report.[94]

55.    Mike uses the progressive discipline process when he disciplines employees.[95]

56.    On October 1, 2007, Defendant gave [MANAGER and SUPERVISOR # 2], an Employee Counseling Report. The designated nature of the conduct was "quality" and "other". The penalty was a one-day suspension.[96] Nine days later, on October 10, 2007, Defendant again disciplined the same supervisor with another Report, where the conduct at issue was again "quality" and "other". The penalty was a two-day suspension, and the Report designated as a final warning.[97]

57.    Defendant has never discharged [MANAGER and SUPERVISOR # 2], or subjected him to a reduction in force.[98]

58.    Defendant issued an Employee Counseling Report to [WAREHOUSE WORKER # 1], on September 18, 2006. Mike issued the Report.[99] The disciplinary action was a "first written warning' for "tardiness". Defendant did not discharge

---

[94]      Ex. 7    [Dep. (Manager and Supervisor # 2) 31:14-20]
[95]      Ex. 7    [Dep. (Mike) 31:21-32:1]
[96]      EX 4C, p. 1-2
[97]      EX 4C, p. 3-4
[98]      Ex. 7    [Dep. (Mike) 34:22-23; 35:1-4]
[99]      Ex. 5C

the warehouse worker from employment. Subsequently, on February 12-14, 2007, Defendant, through Mike, Painter, and Bedford, awarded a pay raise to the warehouse worker.[100] Subsequently, the warehouse worker resigned from Defendant for three-four weeks prior to February 20, 2008.[101] Thereafter, Defendant, on February 20, 2008, approximately (12) twelve days after Doe's discharge, offered WAREHOUSE WORKER # 1 the opportunity to re-join Defendant at the hourly rate of $19.00 per hour, with no break in service.[102] WAREHOUSE WORKER # 1 accepted the offer of reemployment at a higher pay rate than he was previously receiving from Defendant.[103]

59.    WAREHOUSE WORKER # 2 "resigned without proper notice" on August 16, 2004, the date Doe was hired. WAREHOUSE WORKER # 2 stated he was underpaid compared to Renew employees and overlooked for job of Lead Technician.[104] Defendant frequently referred to Doe's position as Lead Technician for Renew. As of February 24, 2008, after Doe's discharge, Defendant had rehired WAREHOUSE WORKER # 2 and given him a pay raise as Renew Technician.[105] Defendant admits the Renew Technician position WAREHOUSE WORKER # 2

---

[100]    Ex. 6C
[101]    Ex. 3 [30(b)(6) Dep. (Chapman) 91:13-18]
[102]    Ex. 7C
[103]    Ex. 3 [30(b)(6) Dep. (Chapman) 91:13-23; 92:1-7]
[104]    Ex. 8C
[105]    EX. 10C; Ex. 3 [30(b)(6) Dep. (Chapman) 91:13-23; 92:1-7]

performed was the same position that Doe had been performing.[106] Subsequently, on January 19, 2008, this WORKER applied for Production Supervisor in the Renew Department.[107] Thereafter, on January 28, 2008, approximately (11) eleven days before Doe's discharge, Defendant hired this WORKER for such position at an annual salary of $45,000.00.[108]

### 5.  Defendant's Discipline of Doe

60.   On January 22, 2008, Defendant issued an Employee Counseling Report to Doe, signed by Painter, Doe's third- level supervisor. The nature of the conduct was "Absenteeism". Defendant did not designate the following types of objectionable conduct on Doe's Report: (a) tardiness; (b) quality of work; (c) quantity of work; (d) insubordination; (e) policy violation; (f) safety or (g) other. The disciplinary action was "First Written Warning." [109]

61.   The Report issued to Doe on January 22, 2008 is the only written disciplinary action received by Doe during his employment.[110]

62.   Defendant issued Doe the Report after Doe had met with Chapman and voiced his complaints concerning the comments and conduct of Mike and Painter.[111]

---

[106]   Ex. 9   [Dep. # 2 (Chapman) 41:7-23; 42:1-4]
[107]   Ex. 9C
[108]   Ex. 11C
[109]   Ex. 2C
[110]   Ex. 3   [30(b)(6) Dep. (Chapman) 153:12-18]; Ex. 6 [Dep. (Tipton), 30:17-22]

63.     Doe did not receive the progressive discipline step of a verbal written warning, which is designated on Report. On the Report form used by Defendant, there is a line providing for the penalty of a "Verbal Warning."[112] Tipton never issued Doe an Employee Counseling Report designating any verbal warning given to Doe.[113]

64.     Tipton, as Doe's direct supervisor from at least September 19, 2005, until Doe's discharge, never issued Doe a verbal warning or written warning on any of the Employee Counseling Reports for any of the following offenses listed on the Report, even though he had the authority to take such disciplinary action: (a) tardiness; (b) quality of work; (c) quantity of work; (d) insubordination; (e) policy violation; (f) safety; or (g) other.[114] Moreover, Tipton did not sign the January 22, 2008 Report.[115]

65.     Tipton had an agreement with Doe as to when Doe could come to work because of Doe's childcare responsibilities. Tipton never issued Doe a written or verbal warning for tardiness.[116]

66.     The penalties that [MANAGER and SUPERVISOR # 2] received, a one-day suspension, a two day suspension, and a final warning, are more severe

---

[111]   Ex. 3     [30(b)(6) Dep. (Chapman)100:16-23;101:1-6]
[112]   Ex. 2C
[113]   Ex. 6     [Dep. (Tipton)     68:10-22]
[114]   Ex. 6     [Dep. (Tipton)  76:9-77:16]
[115]   Ex. 2C, p. 2
[116]   Ex. 6     [Dep. (Tipton)  76:9-77:16]

disciplinary actions than Doe received on January 22, 2008, a first written warning. Significantly, this SUPERVISOR cannot explain why he received two suspensions, each one greater in length, and a final warning, and kept his job, while Doe received a single Report, a first written warning, and lost his job.[117]

### 6.   <u>Defendant's Discharge of Doe</u>

67.    Tipton signed Doe's last performance appraisal on January 26, 2007. The rating was "meets expectations."[118] Tipton, as Doe's supervisor, gave Doe performance evaluations and each evaluation had an overall rating. Tipton never gave Doe an evaluation with an overall rating less than meets expectations.[119]

68.    Defendant discharged Doe on or about February 8, 2008. Defendant via Chapman, testified:

> Q.    Mr. Williamson was terminated due to his **poor work performance** and his **excessive absences**. Do you see that?
>
> A.  Yes.
>
> Q.  And would you agree with that?
>
> A.  Yes.
>
> Q.  And you would agree that his discharge was involuntary?

---

[117]    Ex. 7   [Dep. (Manager and Supervisor # 2) 37: 3-23; 38:1-15]
[118]    Ex. 6   [Dep. (Tipton)   29:12-23-30:1]
[119]    Ex. 6   [Dep. (Tipton)   59:17-60:3]

A.  Yes.[120]

69.   Also, Defendant asserts Doe was a part of a reduction in force.[121]

70.   Defendant did not discharge Doe for misconduct.[122]

71.   Mike Bedford was **the** decision maker to end Doe's employment. Doe.[123] Bedford testified:

> Q.  Okay.  So is it your testimony that you made the decision for [Doe's] employment to end and not the team?
> **. . . .**
>
> Q.  Which one, did the team make the decision or did you make the decision?
>
> A.  As I've already stated, **I made the decision**.[124] [Emphasis supplied].

72.   Bedford was aware of Doe's complaints at the time of his decision to end Doe's employment. In the fall of 2007, Chapman informed him that Doe had made complaints to her about employee statements to him that Doe was uncomfortable with and that Doe was making a complaint based on harassment terms.[125] Chapman informed Bedford that Doe had complained about being called a fag and faggot.[126]

---

[120]   Ex. 3   [30(b)(6) Dep. (Chapman) 25:11-20]
[121]   Ex. 3   [30(b)(6) Dep. (Chapman) 123:10-20]
[122]   Ex. 3   [30(b)(6) Dep.  (Chapman) 123:5-9]
[123]   Ex. 4   [Dep. (Bedford) 9:12-10]
[124]   Ex. 4   [Dep. (Bedford) 74:10-18]
[125]   Ex. 4   [Dep. (Bedford) 22:12-22]
[126]   Ex. 4   [Dep. (Bedford) 18:15-22]

73.     In contrast to Bedford's position, Defendant states the Defendant's executive management team, consisting of Chapman, Bedford, Ken McPherson, and Brad Gray, made the decision to end Doe's employment/subject him to a reduction in force. [127] Chapman, Bedford, and Gray knew of Doe's internal complaints of harassment at the time of the decision to end Doe's employment. As referenced above, Chapman had received the complaints from Doe and informed Bedford. Gray knew of the complaints because he and Chapman disciplined Mike and Painter for engaging in the conduct which Doe complained of to Chapman.

74.     Defendant's management team, prior to making the decision to end Doe's employment, did not review his: (a) personnel file; (b) performance evaluations; [128] or (c) disciplinary file.[129]

75.     Defendant's management team, prior to making the decision to end Doe's employment, did not rank any of the employees who would be subject to any reduction in force.[130]

76.     Defendant's management team discharged Doe because he was having performance issues, attendance issues, and inconsistency in his job performance and his performance did not meet expectations.[131]

---

[127]     Ex. 9     [Dep. # 2 (Chapman) 16:7-11]
[128]     Ex. 9     [Dep. # 2 (Chapman) 14:9-14:15]
[129]     Ex. 9     [Dep. # 2 (Chapman) 17:2-13]
[130]     Ex. 9     [Dep. # 2 (Chapman) 16:12-15]
[131]     Ex. 9     [Dep. # 2 (Chapman) 19:8-10]

## IV.   __ARGUMENT__

The Commission seeks partial summary judgment in favor of the Commission and against Defendant on the liability issue of the Commission's Title VII retaliation claim. Moreover, the Commission seeks summary judgment on specific affirmative defenses set forth in Defendant's Answer and Affirmative Defenses (Doc. 9). On April 25, 2012, Defendant withdrew its Twenty-Sixth Defense (Doc. 88). The Commission seeks summary judgment on Defendant's First through Fifteenth, Seventeenth through Twenty-Fourth, Twenty-Seventh, and Twenty-Eighth affirmative defenses.

## V.   __SUMMARY JUDGMENT STANDARD__

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Anderson *v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex*, 477 U.S. at 323; *see also* Federal Practice and Procedure, Wright and Miller, Ch. 8 Section 2734 ("The general principles of practice under Rule 56 also apply to the assertion of defenses

by a motion for summary judgment.").  The burden is on the moving party to identify those portions of the record that demonstrate that there is no evidence to support the non-movant's case and that, as a matter of law, the moving party must prevail.  *Celotex*, 477 at 323, 325 (1986).

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving the issue to be decided as a matter of law. *See* Fed. R. Civ. P. *56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*  475 U.S. 574, 587 (1986). An issue is material if it is a legal element of the claim under the substantive law which might affect the outcome of the case. It is genuine if the record as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 (1970). Once met by the moving party, however, the burden shifts to the nonmovant to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Early v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth

specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir. 1990).    In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or merely be colorable. *See* Fed. R. Civ. P. 56(e); *Anderson, supra,* 477 U.S. at 249-50.    Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1181 (11th Cir. 2005).

## VI.    COMMISSION'S  MOTION FOR PARTIAL SUMMARY JUDGMENT ON COMMISSION'S RETALIATION CLAIM

As developed herein, Defendant cannot establish with a single, clear, consistent voice, any precise and consistent reason for Doe's discharge. ***Defendant's proffered reasons to support Doe's discharge collide with Defendant's own evidence, policies, and practices, rendering Defendant's entire defense to such retaliatory action unworthy of credence.***

*Sharpe v. Global Sec. Intern.,* 766 F.Supp.2d 1272, 1303 (S.D.Ala. 2011), directly supports the Commission's motion on the retaliation claim. As in *Sharpe*, McPherson does not proffer evidence showing why it chose to lay off Doe (as opposed to some other employee).  *Sharpe* emphasizes: "**simply saying that there were valid business reasons for conducting a layoff says nothing about the selection process for that layoff or why a particular worker was or was not selected**." 766 F.Supp.2d at 1303. *See generally Collazo v. Bristol–Myers Squibb Mfg., Inc.,* 617 F.3d 39, 51 (1st Cir.2010)("An employer may, of course, exercise

its business judgment to eliminate positions as part of a ... reduction in force, even if the individuals in those positions have engaged in protected activity or are members of protected groups.... However, an employer may not use ... 'layoff' as a convenient excuse for terminating an employee on a discriminatory or retaliatory basis.")(Citations omitted).

Accordingly, this Court is justified in finding Defendant's reasons are pretextual and finding Defendant has failed to set forth any justifiable reason to support Doe's discharge, in the context of the myriad of contradictions. Accordingly, the Commission meets its ultimate burden of proof that there are no genuine issues of material fact, <u>between plaintiff and defendant</u>, and thereby summary judgment is appropriate for plaintiff on the liability component of the retaliation claim.

### 1. *Prima Facie* **Case**

Title VII prohibits retaliation against an employee because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C. Section 2000e-3(a).

A *prima facie* case of retaliation under Title VII requires the plaintiff to show that he: (1) engaged in statutory protected expression; (2) suffered a materially adverse employment action [an action which "might have dissuaded a

reasonable worker from making or supporting a charge of discrimination];" and (3) there is some causal connection between the protected expression and the adverse action. *Sharpe v. Global Security Int*., 766 F.Supp.2d 1272, 1300 (S.D. Ala. 2011); *Brown v. Metropolitan Atlanta Rapid Transit Authority*, 261 Fed. Appx. 167, 2008 WL 60279 *5 (11th Cir. 2008) [protected opposition to discrimination]; *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006). Retaliation is a separate offense under Title VII; an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed. *Sullivan v. National R.R. Passenger Corp.,* 170 F.3d 1056, 1059 (11th Cir.1999).

### (a)    First Prong: Statutory Protected Expression

Concerning the first prong of Title VII, for purposes of this motion, Doe engaged in protected opposition to discrimination by properly complaining to Defendant. Doe complained to Chapman, Director of Human Resources, opposing the sexual harassment he received from Mike and Painter, his second and third level supervisors. According to Defendant, in November, 2007, Doe complained to Chapman that Mike and Painter were calling him fag, faggot, and fag fairy,[132] as well as additional statements set forth in the factual discussion of this brief.

---

[132]    Ex. 3 [30(b)(6) Dep. (Chapman) 43:1-9; 43:21-23; 44:1-2]

The Supreme Court and the Eleventh Circuit have made it clear that internal complaints of sexual harassment, such as Doe's complaints in issue, constitute statutory protected expression under Title VII. *See Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee, 555 U.S. 271* (2009); *Carter v. Univ. of South Ala. Children's and Women's Hosp.*, 510 F. Supp.2d 596, 608 (S.D.Ala. 2007).Thus, Doe's complains to Chapman are protected expression.

In a Title VII retaliation claim based on opposition to discrimination the "opposition must be directed at an unlawful practice of an employer, not an act by an individual." *Little v. United Technologies*, 103 F.3d 956, 959, cited by *Brown, supra,* 261 Fed. Appx. at 174, 2008 WL 60279 *5. In this case, Doe clearly opposed discriminatory actions at work, taken by Mike and Painter, persons in his supervisory chain of command and holding higher positions of authority with the Defendant than Doe. Moreover, Defendant received Doe's complaints as complaints against the employer because Chapman, the leading human resources official for the employer, disciplined Mike and Painter for their conduct against Doe.

Moreover, the Eleventh Circuit provides that even if conduct complained about is not unlawful, a plaintiff can establish a *prima facie* case of retaliation under Title VII if he had "**an objectively reasonable belief that he opposed an unlawful employment practice.**" *Little, supra,* 103 F.3d at 960, *supra*, and

*Brown, supra*, 261 Fed. Appx. at 174, 2008 WL 60279 \*5. Thus, Doe "**must not only show that he** *subjectively* **(that is, in good faith) believed that Defendant engaged in unlawful employment practices, but also that his belief was** *objectively* **reasonable under the circumstances."** *Little, supra,* 103 F.3d at 960, and *Brown, supra*, 261 Fed. Appx. at 174, 2008 WL 60279 \*5.

• <u>**Subjective Good Faith**</u>. Doe presents ample evidence showing he had a reasonable basis for a subjective good faith belief that he took part in statutorily protected expression. *See Clover v. Total Sys. Serv., Inc.,* 176 F.3d 1346, 1351 (11th Cir.1999)(protected expression element satisfied where court had no reason to doubt plaintiff did not have a good faith, reasonable belief he was engaging in statutorily protected expression). *Brown, supra*, 261 Fed. Appx. at 174, 2008 WL 60279 \*6.

Doe's understanding of Defendant's Sexual Harassment Policy supports his subjective good faith belief that Defendant engaged in unlawful discriminatory harassment. In response to Defendant's counsel, Doe testified:

> Q.     Here is my question and it's really not that difficult.  This policy is entitled, "Sexual and Other Unlawful Harassment," correct?
>
> A.     Correct.
>
> Q.     **Did you understand that McPherson prohibited unlawful harassment based upon this policy?  Did you understand that**? [Emphasis supplied].
>
> A.     Yes.

> Q.   **And you believed, did you not, that the comments made by Randy Painter and Michael McPherson were unlawful harassment**?  Is that what you believed at some point? [Emphasis supplied].
>
> A.   Yes.[133]

In addition, Tipton, Doe's direct supervisor, admits Doe informed him that he had contacted an attorney concerning his legal rights.[134] Also, Chapman, in the 30(b)(6) deposition and in her second, individual deposition, vividly recalled countless events; however, she provided the following testimony concerning whether Doe informed her that he had retained counsel:

> Q.   In one of your conversations with [Doe], did he mention that he had retained a lawyer regarding his employment issues?
>
> A.   I don't recall.[135]

Moreover, Doe directly confronted Mike and objected to the comments made by Mike and Painter and stated the comments needed to stop.[136] Furthermore, Doe met with Chapman on approximately three-four occasions, and Doe raised his complaints about the harassment he was facing from Mike and Painter, persons above him in the supervisory chain of command.

---

[133]   Ex. 5   [Dep. (Doe) 379:18-380:8]
[134]   Ex. 6   [Dep. (Tipton) 79:4-10]
[135]   Ex. 3   [30(b)(6) Dep. (Chapman) 57:6-57:10]
[136]   Ex. 7   [Dep. (Mike) 70:11-17]

Accordingly, based on the above cumulative facts, Doe's good faith belief was objectively reasonable because a detached person, viewing the evidence in a cumulative manner, could have easily interpreted such evidence as an indication Defendant engaged in an unlawful employment practice.

• **Objectively Reasonable**. Doe meets the requirement that his good faith objective belief that Defendant was violating the law was <u>objectively reasonable in light of the facts and record presented</u>. *Little, supra,* 103 F.3d at 960. Doe's belief was objectively reasonable because Defendant disciplined Mike and Painter for unlawful discrimination. Defendant, through Chapman, admits in testimony:

> Q.   . . . . Anyone found to be engaging in any type of **unlawful discrimination will be subject to disciplinary action up to and including termination of employment**? Do you see that?
>
> A.    Yes.
>
> Q.    Was that the type of discipline that McPherson Companies imposed on Randy Painter and Mike McPherson?
>
> A.   Yes.[137]

Moreover, the nature of Defendant's discipline on Mike and Painter is crucial. Mike and Painter were Defendant's managers. The nature of their offense was sufficiently severe to warrant discipline by high-level officials of Defendant: (1) Chapman, Human Resources Director for all of Defendant's operations; and (2)

---

[137]    Ex. 3 [30(b)(6) Dep. (Chapman) 113:4-13]

Brad Gray, Defendant's Executive Vice President.[138] The discipline imposed on Mike and Painter included an admonishment that any form of unprofessional conduct or harassment was not tolerated and disciplinary action up to and including termination could occur.[139] Furthermore, Defense counsel, in examining Doe, essentially admits that Defendant considers the type of conduct by Mike and Painter to be <u>unlawful discrimination</u>. Defendant's examination of Doe:

> Q.     Here is my question and it's really not that difficult. This policy is entitled, "Sexual and Other Unlawful Harassment," correct?

> A.     Correct.
> Q.     **Did you understand that McPherson prohibited unlawful harassment based upon this policy?  Did you understand that**? [Emphasis supplied].

> A.     Yes.

> Q.     **And you believed, did you not, that the comments made by Randy Painter and Michael McPherson were unlawful harassment**?  Is that what you believed at some point? [Emphasis supplied].

> A.     Yes.[140]

### (b)    Second Prong: Materially Adverse Action

Doe suffered a material adverse employment action by his involuntary discharge from employment on February 8, 2008. This action occurred after his complaints to Chapman concerning the sexual harassment, as outlined above.

---

[138]    Ex. 3 [30(b)(6) Dep. (Chapman) 19:23; 60:1-10; 60:19-23; 61:1-3]
[139]    Ex. 3 [30(b)(6) Dep. (Chapman) 19:23; 60:1-10; 60:19-23; 61:1-3]
[140]    Ex. 5 [Dep. (Doe) 379:18-380-8]

(c)    *Third Prong: Causal Connection*

Third, Doe establishes the requisite causal connection exists between his protected conduct and the materially adverse action of discharge. The Eleventh Circuit construes the causal link element <u>broadly</u> so that "**a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated**." *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1277 (11th Cir.2008), quoting *Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1460 (11th Cir.1998)(quoting *EEOC v. Reichhold Chems., Inc.,* 988 F.2d 1564, 1571-72 (11th Cir.1993))(internal quotation marks omitted). *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985) explains:

> We do not construe the "causal link" in the [retaliatory discharge] formula to be the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action. Such a connection would rise to the level of direct evidence of discrimination, shifting the burden of persuasion to the defendant.

*Pears v. Mobile County***,** 645 F.Supp.2d 1062, 1096 (S.D.Ala. 2009), explains that temporal proximity is not the only means by which a plaintiff can establish a causal connection. To the contrary, courts have routinely found a causal connection even as to retaliatory acts occurring long after the protected activity, where a chain of intervening retaliatory acts links those events. *See, e.g., Bass,* 256 F.3d at 1117-19 (deeming causal connection element satisfied even though adverse action occurred more than one year after EEOC charge, where retaliatory acts

commenced shortly after charge was filed); *Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453, 1457 (11th Cir.1998)(causal connection requirement satisfied where "the series of adverse employment actions commenced almost immediately after management learned she had filed the charge"); *Odom v. Mobile Infirmary,* 2008 WL 748398, *10 (S.D. Ala. Mar. 17, 2008)(causal connection element established even though plaintiff was fired seven months after protected activity, where "the chain of retaliatory treatment commenced immediately after she complained").

In this case, Defendant admits Doe met with Chapman on October 30 or 31, and two or three times thereafter. Doe's communicated his complaints to Chapman. Chapman shared with the complaints with Bedford, Vice President of Operations, and with Gray, Executive Vice President. Gray knew of the complaints because Gray and Chapman made the decision to counsel verbally Mike and Painter for the conduct at issue in the complaints. Thus, Bedford, Gray, and Chapman knew of Doe's complaints prior to Doe's discharge.

Doe's meetings with Chapman were contemporaneous with, or followed by, a linked chain of intervening events. First, Defendant admits that on or after the first meeting between Doe and Chapman, Painter asked Chapman when Defendant should send Doe to his random drug test.  Such action is suspicious because: (1) if a test is random, why would there be the need to select the date to take the test?; (2) this "random" drug test occurred in conjunction with Doe's first meeting with

Chapman to discuss his employment issues; and (c) while Chapman did not recall when Doe's prior drug test occurred; Doe was only tested by Defendant on one other occasion, which was virtually (4) years earlier in his pre-employment drug test.  Painter admitted he had no reason to doubt that such drug testing scenario was accurate.

Second, Defendant created a situation resulting in Doe not working for two days without pay. Even if Defendant offered this arrangement and Doe accepted, at such point, Doe was not in any realistic position to challenge Chapman because he was seeing her to address the harassment he was confronting. Third, when Doe returned to work, Defendant had altered his duties. Fourth, on January 22, 2008, Doe received his first written disciplinary action; an Employee Counseling Report for absenteeism, and a first written warning. Defendant did not provide Doe any progressive discipline such as a Report with a verbal warning. Thereafter, on February 8, 2008, Defendant discharged Doe, approximately 17 days after receiving his first written disciplinary action. Again, Defendant denied him the benefit of progressive discipline, after his discipline on January 22, 2008 and prior to his discharge on February 8, 2008, contrary to Defendant's own practices. For example, Defendant did not provide him with the following available steps which Defendant had provided to other employees who retained their positions, such as a: (a) second written warning; (b) suspension; and (c) final written warning.

## 2.    **Pretext: Retaliatory Discharge**

The Commission establishes pretext by Defendant, concerning the retaliatory discharge of Doe. The cumulative and conflicting evidence provided by Defendant concerning multiple reasons for its actions establishes pretext.

*Not a single reason provided by Defendant, to support Doe's discharge, is consistent and/or credible with Defendant's own evidence, policies, and practices.*

Concerning pretext, *Brown v. Chertoff,* 563 F.Supp.2d 1372, 1378-1379 (S.D.Ga.,2008), states: "To adequately show pretext, an employee must cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct. In other words, he must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." [Internal quotations omitted]*.*

**The Commission establishes pretext by presenting sufficient evidence to show that the proffered reasons were not the real reason for the adverse employment action and that the real reason was retaliation**. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993). The EEOC demonstrates McPherson's multiple proffered reasons were not the true reasons by indirectly establishing to

the Court that a retaliatory reason more likely motivated the employer and/or indirectly by showing that Defendant's employer's proffered reasons are unworthy of credence. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, (1981).

### (a)   Timing of Doe's Single Disciplinary Action and Discharge

Defendant provided Doe a single Employee Counseling Report (disciplinary action) on January 22, 2008. This action was a first written warning for absenteeism. This action was taken only after: (i) Doe had complained of the harassment to Chapman; (ii) informed Tipton that he had talked to an attorney concerning his working conditions; (iii) been subjected to an alleged random drug test on or the day after his meeting with Chapman; and (iv) been required to take off work for (2) two days without pay.

The January 22, 2008, disciplinary action was approximately 17 days prior to Defendant's discharge on February 8, 2008. Pursuant to McPherson's practice and policy of using the Employee Counseling Report concerning other employees, this single action, a first warning, does not support Doe's discharge.

**Critically, in the period between January 22, 2008-February 8, 2008, Defendant did not issue Doe any Employee Counseling Report. Thus, Defendant cannot establish why it selected Doe to be discharged on February 8, 2008.** Moreover, Defendant cannot cite a single credible event, between January 22, 2008 and February 8, 2008 to support Doe's discharge. First, there is no

evidence of any disciplinary action against Doe in this period. Second, to the extent Defendant asserts it provided Doe verbal warnings, such position is without merit because Defendant's established practice is to use the Employee Counseling Report for verbal warnings, as discussed above concerning SUPERVISOR # 1. Third, Tipton admits that he never provided Doe with a Report consisting of a verbal warning.

### (b)    *Defendant's Critical Admissions*

Doe received a single written warning and he was discharged. Defendant's own Manager cannot understand this decision. The penalties received by this MANAGER and SUPERVISOR # 2 include a one-day suspension, a two-day suspension, and a final warning. The MANAGER admits such actions are more severe disciplinary actions than Doe received on January 22, 2008, a first written warning. Significantly, this MANAGER cannot explain why he received two suspensions, each one greater in length, and a final warning and kept his job, while Doe received a single Employee Counseling Report, a first written warning, and lost his job.[141]

Tipton, Doe's direct supervisor, did not sign the January 22, 2008 Report; it was signed by Painter, Doe's third-level supervisor. Tipton admits he supervised Doe from September 9, 2005 until Doe's discharge on February 8, 2008. During

---

[141]     Ex. 7    [Dep. (Manager and Supervisor # 2) 37: 3-23; 38:1-15]

this period, Tipton had the authority to issue Employee Counseling Reports to Doe.

Tipton admits that during such period, he **never** issued any Report to Doe for any

of the following forms of misconduct: (1) tardiness; (2) quality of work; (3)

quantity of work, (4) insubordination; (5) policy violation; (6) safety; or (7) other

type of misconduct, or issued any verbal warning to Doe on any Report.

### *(c)    Defendant's Arbitrary Use of Disciplinary Process*

Defendant verbally counseled Mike and Painter for actions that Chapman

describes as **unlawful discrimination** in their treatment of Doe.[142] Yet, Defendant

retained Mike and Painter, and did not issue them Employee Counseling Reports.

In contrast, Defendant discharged Doe, the person who opposed discrimination and

who was the target of Mike and Painter's unlawful discrimination.

Defendant did not discharge any other employee for an offense of a first

written warning on the Employee Counseling Report used by Defendant. As set

forth in detail above, Defendant issued the following disciplinary actions to

employees and every employee retained their position and was not subjected to any

discharge or reduction in force: (1) verbal warning to Supervisor # 1; (2)  a one-

day suspension, a two day suspension, and a final warning to MANAGER and

SUPERVISOR # 2; and (3) a first written warning for tardiness to WAREHOUSE

---

[142]    Ex. 3    [30(b)(6) Dep.   (Chapman) 113:4-13]

WORKER # 1, who was not discharged, and after he resigned, Defendant offered him a position at a greater amount of pay to return and he accepted.

### (d)   *Defendant's Contradictory Identification of Decision Maker*

Defendant's key officials <u>cannot agree</u> as to the identification of the decision maker for the decision to discharge/lay off Doe. Defendant asserts multiple distinct decision makers. First, Mike Bedford, Vice President of Operations, testified that **he was the** decision maker[143] to end Doe's employment, the "management executive committee" that Chapman asserts made the decision. Second, Defendant, via Chapman, testified that "we determined" Doe's employment would be terminated, referring to the management team consisting of herself, Brad Gray, Mike Bedford, and Ken McPherson.[144]. Finally, Tipton testified Painter and Chapman made the decision to discharge Doe.[145]

### (e)   *Defendant's Inconsistent Reasons for Discharge*

### • <u>Bedford's Process and Reasons for Discharging Doe</u>.

Bedford asserts he was the decision maker to end Doe's employment. Bedford's alleged reasons are deficient because the record contradicts them. First, Bedford did not even know Doe's title. Bedford testified:

---

[143]    Ex. 4    [Dep. (Bedford) 13:20-23; 14:1-5]
[144]    Ex. 9    [Dep. # 2 (Chapman) 16:7-3]
[145]    Ex. 6    [Dep. (Tipton)  94:18-22]

> Q.      So what would have been [Doe's] specific job title prior to making the complaints to Anna Marie Chapman?
>
> . . . .
>
> A.      I don't have an answer for that.[146]

Second, Bedford was unaware Lamar Tipton was Doe's direct supervisor. [147] Third, Bedford was unfamiliar with Doe's disciplinary history because he was unaware that Doe had only received one written disciplinary action and he was unaware of the number of times Doe had been "written-up." [148] Bedford was not aware of Doe ever receiving any disciplinary action more severe than a first written warning.[149] Moreover, Bedford was unaware of any written document disciplining Doe other than the January 22, 2008 Report.[150] Fourth, Bedford alleges he consulted with Painter concerning Doe's discharge, including "who we were going to let go."[151] Bedford contends Painter gave him guidance and feedback concerning Doe and the layoff. [152] In contrast, Painter testified Bedford made the decision to lay off Doe and picked Doe, and Painter was not involved.[153] Also, prior to February 8, 2008, when Bedford and Chapman informed Doe that he was being

---

[146]   Ex. 4   [Dep. (Bedford) 49:1-6]
[147]   Ex. 4   [Dep. (Bedford) 62:8-12]
[148]   Ex. 4   [Dep. (Bedford) 37: 6-11; 55:10-13]
[149]   Ex. 4   [Dep. (Bedford) 39:1-4]
[150]   Ex. 4   [Dep. (Bedford), 64:17-22]
[151]   Ex. 4   [Dep. (Bedford) 24:9-23; 25:1]
[152]   Ex. 4   [Dep. (Bedford), 107:22-23; 108:1-8]
[153]   Ex. 8   [Dep. (Painter), 66:18-21; 82:16-19; 82:23; 83:3-4]

discharged, Painter had not discussed with Bedford "the fact that [Doe] was no longer going to be employed at McPherson."[154]

Fifth, Bedford alleges he reviewed Doe's performance evaluations and such review was the basis for Doe being laid off. [155] Bedford asserts the evaluations revealed "tardiness, lack of productivity, his personal issues being brought to work, and that sort of thing."[156] However, Bedford does not recall whether such items were in Doe's performance evaluations, stating: "I don't recall. I believe -- just from this time period of four years, I just don't recall the specifics of what was in his evaluation."[157] Bedford testified:

> Q.      And is that the process that you followed in evaluating [Doe's] performance when you were considering him for part of the reduction in force?
>
> A.      Absolutely. It specifically had to do with his performance, his tardiness, his productivity, his attitude, all those came into play, and really his fit and his job skill set is really what I'm trying to state.[158]

Sixth, Bedford alleges Doe received disciplinary actions for tardiness and lack of productivity, but not improper statements. [159]

---

[154]   Ex. 8   [Dep. (Painter),  67:10-21]
[155]   Ex. 4   [Dep. (Bedford)  38:9-21]
[156]   Ex. 4   [Dep. (Bedford)  38:9-21]
[157]   Ex. 4   [Dep. (Bedford)  38:22-23; 39:1-4]
[158]   Ex. 4   [Dep. (Bedford),  105:15-23]
[159]   Ex. 4   [Dep. (Bedford)  51:19-23]

The Commission asserts that such items were not in any of Doe's performance evaluations and Doe never received any Employee Counseling Report concerning any of these alleged issues.

### •<u>Management Team's Process and Reasons for Discharging Doe.</u>

Defendant's management team provides a process unworthy of credence and reasons for Doe's discharge that conflict with Defendant's records and policies. The team provides inconsistent and unsupportable versions of the reasons for Doe's discharge.

Defendant's management team, prior to making the decision to end Doe's employment, did not review his: (a) personnel file; (b) performance evaluations;[160] or (c) disciplinary file.[161] The team, prior to making the decision to end Doe's employment, did not rank any of the employees who would be subject to any reduction in force.[162] Thus, Defendant's team did not engage in a good faith process, as required by *Sharpe, supra*, 766 F.Supp.2d at 1303, to determine why **this particular worker**, Doe, was selected for discharge/lay-off. Finally, Defendant's team discharged Doe because he was having performance issues,

---

[160]    Ex. 9    [Dep. # 2 (Chapman) 14:9-14:15]
[161]    Ex. 9    [Dep. # 2 (Chapman) 17:2-13]
[162]    Ex. 9    [Dep. # 2 (Chapman) 16:12-15]

attendance issues, and inconsistency in his job performance and his performance did not meet expectations.[163]

Critically, every reason conflicts with Doe's disciplinary record and Doe's performance record, as reflected in his evaluations and lack of Employee Counseling Reports on any aspects of job performance. The Report provides for a McPherson employee to be disciplined for job performance by such factors as: (a) quality of work; (b) quantity of work; (c) insubordination; (d) policy violation; or (e) other. Doe never received any Report on any of these issues. Furthermore, any allegation Doe was terminated because of any performance issue is without merit because Defendant never indicated any performance deficiencies in any of Doe's performance evaluations. Also, all of Doe's performance evaluations were at the level of "meets expectations" or higher.

## VII.  COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT: DEFENDANT'S AFFIRMATIVE DEFENSES ARE VAGUE, CONCLUSIONARY, AND INSUFFICIENT AS A MATTER OF LAW

Courts have routinely held that affirmative defenses are subject to summary judgment. *See Travelers Express Co. v. American Express Integrated Payment Systems, Inc.*, 80 F. Supp. 2d 1033, 1037-38 (D. Minn. 1999)(court ruled on

---

[163]    Ex. 9    [Dep. # 2 (Chapman) 19:8-10]

parties' motions for summary judgment to strike affirmative defenses under Rule 56(c)); *Bieter Co. v. Blomquist, et al.*, 848 F. Supp. 1446, 1448 (D. Minn. 1994) (court ruled on plaintiff's motion for partial summary judgment that affirmative defense of unclean hands was not available as a matter of law); *EEOC v. Exxon Corp.*, 1 F. Supp. 2d 635, 638 (N.D. Tex. 1998), *rev'd on other grounds,* 203 F. 3d 871 (5th Cir. 2000)(court held that the legal viability of defendant's affirmative defenses was more appropriately determined pursuant to a motion for summary judgment under Rule 56 than a motion to strike under Rule 12(f)); *Hoglund v. Daimler Chrysler Corp.*, 2000 WL 760958, *3 (D. Me. 2000)(court held that resolution of an affirmative defense is integral to resolution of a claim, therefore, in moving for summary judgment on an affirmative defense, a plaintiff is in fact moving for summary judgment on a part of his claim).

In this motion, the Commission seeks summary judgment on Defendant's following affirmative defenses:   First through Fifteenth, Seventeenth through Twenty-Fourth, Twenty-Seventh, and Twenty-Eighth affirmative defenses, to narrow the issues for trial. Rule 56(a) of the Federal Rules of Civil Procedure expressly authorizes a party to move for summary judgment "on all or part of [the] claim." Further, "If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what facts are not genuinely at issue…[and] issue an order specifying what facts… are not genuinely at issue."

Each of Defendant's Affirmative Defenses at issue is vague and conclusory, leaving the Commission to guess what facts and circumstances the Defendant contends support those defenses.  Answers are pleadings and, as such, are subject to the pleading requirements of the Federal Rules of Civil Procedure. Defenses that fail to meet the standards applicable to pleadings in general may be stricken. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).  Indeed, since the decisions in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 554 (2007), abrogating *Conley v. Gibson*, 355 U.S. 41 (1957), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), a heightened level of scrutiny has been applied to answers which contain conclusory defenses.  *See Davis v.  Coca-Cola Bottling Co., Consolidated*, 516 F.3d  955,  979-81 (11th Cir. 2008). Even under the liberal notice pleading standard of the Federal Rules of Civil Procedure, an allegation must include either direct or inferential allegations respecting all material elements of the claim asserted. *Reis Robotics USA, Inc. v. Concept Industries, Inc.*, 462 F.Supp.2d 897, 904 (N.D. Ill. 2006); *MAN Roland v. Quantum Color Corp.*, 57 F.Supp.2d 576, 578 (N.D. Ill. 1999).  Bare legal conclusions even when attached to narrated facts will not suffice.  *Heller*, 883 F.2d at 1294 (granting motion to strike affirmative defenses in which defendants omitted any short and plain statement of facts and failed to allege necessary elements of claims; *cf. Kaiser Aluminum &*

*Chemical Sales, Inc. v. Avondale Shipyards, inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)(conclusory allegations contained in a complaint not accepted as true).

### 1.   <u>Overview of Commission's Arguments</u>

The Commission's motion for summary judgment as to Defendant's affirmative defenses is due to be granted. Defendant's affirmative defenses at issue all suffer from one or more of the following fatal defects: they are insufficient as a matter of law, they merely attempt to negate elements of the Commission's claims or deny the Commission's allegations, and they are wholly conclusory, shot-gun, boilerplate, and lack specifics, failing to meet basic pleading standards.

First, many of Defendant's alleged affirmative defenses are legally invalid in that they are indisputably unavailable as a defense to a Title VII action initiated by the Commission. Second, Defendant's affirmative defenses are either one sentence, or a combination of ambiguous, broad allegations. Defendant has asserted only labels and conclusions and failed to include any specific factual matters. The defenses do not respond to either of the two specific causes of action brought by the Commission. This leaves the Court and Plaintiff to speculate as to the applicability of any defense to any claim. Accordingly, these defenses are due to be stricken. Third, many of Defendant's defenses suffer from the fatal defect that they are, in fact, not affirmative defenses at all, but simply allegations attempting to

deny elements of the Commission's prima facie case or otherwise deny allegations in the Commission's Complaint.

The Commission asserts two general arguments regarding the standards by which Defendant's averments must be considered. First, the pleading standards in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)(expanding *Twombly* standard to all civil actions), directly apply to, and support, the Commission's argument that Defendant's affirmative defenses are insufficient. Second, the Commission's motion is due to be granted in its entirety based on applicable pleading requirements and case law, even without applying the *Twombly/Iqbal* standards.

## 2. ***Twombly*** **and** ***Iqbal*** **Support Plaintiff's Motion**

In the present case, the *Twombly/Iqbal* analysis mandates the striking of Defendant's affirmative defenses. Pursuant to *Twombly/Iqbal,* Rule 8 of the Federal Rules of Civil Procedure requires that Defendant  must  assert  defenses that are plausible on their face, include specific factual matters, and do more than assert mere "labels and conclusions."

As the court in *Francisco v. Verizon South, Inc.,* 2010 WL 2990159, at *6 (E.D. Va. July 29, 2010) concluded after obviously extensive research, "The majority of district courts have extended the *Twombly-Iqbal* standard to a defendant's pleading of affirmative defenses." *Francisco* then cites 18 district

courts which have found the heightened *Twombly-Iqbal* standard applies to affirmative defenses. *Francisco,* 2010 WL 2990159, at *6 n.3. Thus, the Commission's position is consistent with the weight of authority, at least 18 district courts.  As one of those 18 courts aptly pointed out in *Palmer v. Oakland Farms, Inc.,* 2010 WL 2605179 (W.D. Va. June 24, 2010), there are many sound reasons for holding that *Twombly/Iqbal* applies to affirmative defenses. For example, "[I]t neither makes sense nor is it fair to require a plaintiff to provide the defendant with enough notice that there is a plausible, factual basis for her claim under one pleading standard and then permit the defendant under another pleading standard simply to suggest that some defense might possibly apply in the case." *Id.,* at *4.

The court in *Francisco* pointed out that Form 30 appended to the Federal Rules of Civil Procedure also supports the conclusion that the pleading of affirmative defenses requires more than a mere label or conclusion. The court stated,

> Finally, Form 30, appended to the Federal Rules of Civil Procedure pursuant to Rule 84, underscores the notion that a defendant's pleading of affirmative defenses should be subject to the same pleading standard as a plaintiff's complaint because it includes factual assertions in the example it provides.  The Form includes within it a suggestion that minimal facts be asserted before raising a statute of limitations defense.

*Francisco v. Verizon South, Inc.,* 2010 WL 2990159, at *8 (E.D. Va. July 29, 2010).  The example for pleading a statute of limitations defense is: "The plaintiff's claim is barred by the statute of limitations because it arose more than ___ years

before this action was commenced."

Under the *Twombly-Iqbal* standard "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Threadbare recitals … supported by mere conclusory statements, do not suffice." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Defendant's affirmative defenses do not meet these minimal standards.

### 3.    Defendant's Affirmative Defenses Are Insufficient Even Without Applying *Twombly/Iqbal*

Rule 8(b)(1)(A) requires a defendant to "state in short and plain terms its defenses to each claim asserted against it." *Fed.R.Civ.P.* 8(b)(1)(A). A defendant must give "fair notice of the defense" by sufficiently articulating the defense so that the plaintiff "is not a victim of unfair surprise." *Barna Conshipping, S.L. v. 1,800 Metric Tons, More or Less, of Abandoned Steel*, 2009 WL 1211334, *1 (S.D. Ala. May 4, 2009).

A defendant is required to plead an affirmative defense with sufficient facts to provide plaintiff with **fair notice**. *E.E.O.C. v. Courtesy Building Services, Inc*. 2011 WL 208408, *1-2 (N.D. Tex. 2011)("there must be enough factual particularity in the affirmative defense to give the plaintiff 'fair notice'"), citing *Woodfield v. Bowman,* 193 F.3d 354, 362 (5th Cir.1999). A defendant must do

more than make conclusory allegations. An affirmative defense must be stricken if it comprises no more than "bare bones conclusory allegations." *Microsoft Corp. v. Jesse's Computers & Repair, Inc.,* 211 F.R.D. 681, 684 (M.D. Fla. 2002).

Many courts have held, under this traditional standard, bare bones conclusory allegations, stating no factual particularity, such as those alleged by the Defendant in this case, are insufficient. *See, e.g., Harris v. USA Insurance Companies,* 2011 U.S. Dist. Lexis 97250, \*7-8 (E.D. La. Aug. 30, 2011)(vague, conclusory affirmative defenses insufficient under either fair notice or plausibility standard); *Cosmetic Warriors Limited v. Lush Boutique, L.L.C.,* 2010 WL 481229, \* 2 (E.D. La. Feb. 1, 2010)(affirmative defense that "Plaintiff's claims are barred by the doctrine of equitable estoppel" "fail[s] to provide enough specificity or factual particularity to give the plaintiff fair notice"); *E.E.O.C. v. Courtesy Building Services, Inc*. 2011 WL 208408 (N.D. Tex. 2011); *Microsoft Corp. v. Jesse's Computers & Repair, Inc.,* 211 F.R.D. 681 (M.D. Fla. 2002).

A very recent example is *Smith v. City of New Smyrna Beach*, 2011 WL 6099547, \*1 (M.D. Fla., Dec. 7, 2011). *Smith* granted plaintiff's motion to strike all 16 of the defendant employer's affirmative defenses, without applying the *Twombly/Iqbal* analysis.

*Smith's* reasoning is directly applicable to the present issue:

> The purported affirmative defenses share one shortcoming: They are entirely devoid of specifics. They contain nothing from which the reader could conclude that the City actually believes that they apply in this case. Rather, **the affirmative defenses appear to be simply a generic list of defendant-friendly conclusions that could conceivably be reached in an employment discrimination case**. Even when challenged, the City provides no support for its pleading, nothing to suggest that it has reviewed this matter and has a good faith belief that these issues will need to be resolved. While affirmative defenses may not have to meet the *Twombly/Iqbal* standard, they must be more than boilerplate.

*Smith, supra,* 2011 WL 6099547, *1.

The Eleventh Circuit decision in *Davis v. Coca-Cola Bottling Co. Consolidated,* 516 F.3d 955, 981 (11th Cir. 2008) strongly supports the Commission's position in this case. *Davis* noted that the Eleventh Circuit has "roundly, repeatedly, and consistently **condemn[ed]**" model "shotgun" pleadings. [Emphasis supplied]. The *Davis* court declared that "we have "explicitly **condemned shotgun** pleadings upward of <u>fifty times</u>" *Id.* at 980, n. 54. [Emphasis supplied]. *Davis* admonished Defendant for alleging fourteen "shotgun" answers of **one sentence** which failed to respond to any specific cause of action. 516 F. 3d at 981.

### 4.    Mere Denials of the Plaintiff's Case are Not Valid Affirmative Defenses

A separate basis for summary judgment as to many of Defendant's defenses is that several of Defendant's assertions, designated as affirmative defenses, are

actually mere denials of elements of the Commission's claims. Such a defense will be stricken "because it is not in fact an affirmative defense at all, but instead the statement is a denial of the facts alleged in the Complaint." *Curry v. High Springs Family Clinic and Diagnosis Center Inc.,* 2008 WL 5157683, *5 (N.D. Fla. Dec. 9, 2008). Defendant fails to recognize that "[a] defense is not an affirmative defense where it merely negates an element of the plaintiff's prima facie case.'" *Etienne v. Wal-Mart Stores*, 197 F.R.D. 217, 220-221 (D. Conn. 2000), (internal citations and quotations are omitted).

Affirmative defenses that merely negate elements of a plaintiff's claim, or simply repeat denials found elsewhere in the answer are not affirmative defenses and are redundant. *See, e.g., F.T.C. v. Think All Pub. L.L.C.,* 564 F. Supp. 2d 663, 665–66 (E.D. Tex. 2008)(striking affirmative defenses that "disprove one or all of the elements of a complaint" as redundant); *Wiemer v. Felderbaum & Assocs., P.A. ADP Totalsource III, Inc.,* 2008 WL 299016, at *2 (S.D. Fla. Feb. 1, 2008) (striking an affirmative defense that was actually just a "denial of an allegation lodged against" the defendant); *Weisman v. First Data Merchant Servs. Corp.,* 2006 WL 3694853, at *1 (N.D. Ill Dec. 11, 2006)(striking affirmative defense of legitimate business reasons in Title VII discrimination case as defendant's "statements are not affirmative defenses; they are denials of plaintiff's allegations that are redundant of its answer to the complaint").

**5.    Summary Judgment is Due to be
<u>Granted as to Legally Insufficient Defenses</u>**

An affirmative defense that is legally without merit is insufficient as a matter of law. *See McCullough v. Owens Enterprises, Inc.,* 2008 WL 2374245, at *3 (S.D. Miss. June 5, 2008). Many of Defendant's affirmative defenses suffer from this fatal defect.

"An affirmative defense is 'any matter that serves to excuse the defendant's conduct or otherwise avoid the plaintiff's claim, but which is proven by facts extrinsic to the plaintiff's claim, or a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's claim, even if all allegations in the complaint are true.'" *Harris v. USA Insurance Companies,* 2011 U.S. Dist. Lexis 97250, * 6-7 (E.D. La. Aug. 30, 2011)(quoting 27 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 62.79). In other words, an affirmative defense admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matters. *Royal Palm Sav. Ass'n v. Pine Trace Corp*, 716 F. Supp. 1416, 1420 (M.D. Fla. 1989). As explained in *Barna Conshipping, S.L. v. 1,800 Metric Tons, More, of Abandoned Steel*, 2009 WL 1211334, at *1 (S.D. Ala. May 4, 2009), an affirmative defense is insufficient as a matter of law if (1) on its face, it is patently frivolous, or (2) it is clearly invalid as a matter of law.

6.   **Defendant's Specific Affirmative Defenses**

The Commission is entitled to Summary Judgment on Defendant's First through Fifteenth, Seventeenth through Twenty-Fourth, Twenty-Seventh, and Twenty-Eighth affirmative defenses for the following additional, specific reasons.

> **(a)    *First, Sixth, Seventh, Fifteenth, Eighteenth, and Twenty-Eighth Affirmative Defenses-Mere Denials of Elements of Plaintiff's Case***

In these defenses, Defendant, in various ways denies it has done anything wrong, denies it engaged in discriminatory or retaliatory conduct, and denies it is liable for damages for anything it did. Defendant has not identified any witness or facts in its disclosures or in discovery supporting such defenses. Each of these defenses makes unnecessary assertions which at their core are nothing more than denials of the Plaintiff's prima facie case.   Each defense is a variation of Defendant's insistence that it has done no wrong. Defendant is not asserting matters outside the pleadings but only attempting to negate elements of the claims. These defenses are not proper or necessary affirmative defenses to this action.

Where a defendant denies plaintiff's allegations of alleged discrimination in employment, an affirmative defense that defendant acted for legitimate, non-discriminatory reasons is both unnecessary and inappropriate because the assertion is already put in issue by defendant's denial in its answer. *Renalds*, 119 F.Supp.2d at 804 (N.D. Ill. 2000).  "A defense is not an affirmative defense where it merely

negates an element of the plaintiff's prima facie case.'"   *Etienne v. Wal-Mart Stores*, 197 F.R.D. 217, 220-221 (D.Conn. 2000), (internal citations and quotations are omitted).   If Defendant is seeking to raise the Title VII of the Civil Rights Act of 1964, as amended, "good faith" defense, 42 U.S.C. Sec. 2000e-12(b)(no person shall be subject to liability or punishment if he pleads and proves that the act or omission was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission), it has failed to plead the elements of this defense.

Defendant's contentions that its actions were not discriminatory and retaliatory are already at issue through its denials in its answer to the complaint. When a defendant asserts an alleged affirmative defense, which is actually a denial rather than an affirmative defense, and the same was already denied in the answer to the complaint, the defense may be stricken as redundant. *Wiemer v. Felderbaum & Associates, P.A.,* 2008 WL 299016 * 2 (S.D. Fla. Feb. 1, 2008).   In addition, a "defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *In re Rawson Food Service, Inc*., 846 F.2d 1343, 1349 (11th Cir. 1988). Therefore, Defendant's First, Sixth, Seventh, Fifteenth, Eighteenth, and Twenty-Eighth Defenses are redundant and unnecessary, and therefore should be stricken**.**

### (b)     Second Affirmative Defense-Statute of Limitations

Defendant's Second Affirmative Defense is that "Defendant pleads the applicable statute of limitations to the extent they may apply." (Doc. 9, p. 5). Defendant has not identified any witness or facts in its disclosures or in discovery supporting such a defense. In *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355 (1977), the United States Supreme Court held there is no statute of limitations period for EEOC suits under Title VII. Additionally, it is undisputed that Doe filed his EEOC charge within 180 days of the termination of his employment. Defendant's statute of limitations defense is patently without merit.

The Second Defense is exactly the boilerplate style answer which has been criticized in both *Davis, supra,* 516 F.3d 955, 979-81 and *Byrne, supra,* 261 F.3d 1075, 1129 (criticizing the one sentence defense of statute of limitations). Defendant fails to: (1) cite a specific statute of limitations, (2) connect any alleged, applicable limitations statute to any of the four specific claims asserted by the Commission, or (3) provide any other specific facts to put the EEOC on notice of the defense claimed.

Numerous courts have stricken such a conclusory, non-specific statute of limitations defense. *See Castillo v. Roche Laboratories Inc.,* 2010 WL 3027726, *3 (S.D. Fla. Aug. 2, 2010)(striking Third Affirmative defense asserting statute of limitations); *Torres v. TPUSA, Inc.,* 2009 WL 764466 *1 (M.D. Fla. Mar. 19,

2009)(statute of limitations defense stricken where "not sufficiently pled); *Racick v. Dominion Law Associates,* 270 F.R.D. 228, 235 (E.D. N.C. 2010)("pleader must show "some valid premise for asserting the defense").

### (c)   Third, Fourth, Fourteenth, and Seventeenth Affirmative Defenses –"Laundry List of Non-Specific Defenses"

Defendant's Third, Fourth, Fourteenth, and Seventeenth Affirmative Defenses are simply a laundry list of the names of defenses that could conceivably apply in a civil action. Defendant does not affirmatively allege that any such defenses apply in this case (with the exception of unclean hands), but instead pleads these defenses "to the extent they *may* apply" (emphasis added).

All of these defenses have particular elements required to establish the defense.[164]  Defendant failed to articulate these defenses with any particularity, let alone with the sufficiency to give the Commission fair notice of the defenses claimed.  Indeed, Defendant's affirmative defenses of estoppel and waiver mirror the defenses rebuked in *Byrne, supra,* 261 F.3d at 1129, which criticizes defendants' one-sentence defenses of estoppel, waiver, and other defenses discussed therein. Similarly, *Davis, supra,* 516 F.3d 955, 979-981 and 981, n.61,

---

[164] For example, waiver is the intentional relinquishment of a known right. *Dominex, Inc. v. Key*, 456 S. 2d 1047, 1058 (Ala. 1984). Estoppel is a principle of equity that operates to prevent an otherwise unjust result and applies when a party takes inconsistent positions to another's prejudice. *National Fire Ins. Co. v. Housing Development Co.*, 827 F.2d 1475, 1480 (11th Cir. 1987).

specifically address the deficiency of a one-sentence laches defense as ambiguous as asserted in a shotgun manner.

Numerous courts have stricken defenses that contained no particulars, but simply assert the label of waiver, estoppel, or ratification. *See Cosmetic Warriors Limited v. Lush Boutique, L.L.C.,* 2010 WL 481229, * 2 (E.D. La. Feb. 1, 2010)(striking estoppel defense stated in boilerplate language because it fails to give plaintiff fair notice); *E.E.O.C. v. Courtesy Building Services, Inc.* 2011 WL 208408, at * 4-5 (N.D. Tex. Jan. 21, 2011)(striking defenses of waiver and estoppel "not accompanied by any factual allegations giving notice of the nature of the defense"); *Torres v. TPUSA, Inc.,* 2009 WL 764466, at *3(M.D. Fla. Mar. 19, 2009)(striking waiver and estoppel defenses "where there is nothing suggesting [these defenses] are plausible."); *Francisco v. Verizon South, Inc.,* 2010 WL 2990159, at *8 (E.D. Va. July 29, 2010)(striking defendant's defense 7 asserting "waiver and estoppel");  *Palmer v. Oakland Farms, Inc.,* 2010 WL 2605179, at * 6 (W.D. Va. June 24, 2010)("Defense 8's pleas of 'Estoppel and Laches' without more is insufficient to state either of these defenses and are properly subject to being stricken as bare legal conclusions."); *Racick v. Dominion Law Associates,* 270 F.R.D. 228, 237 (E.D. N.C. 2010)(waiver, estoppel, and laches defense stricken as it "fails to meet the notice pleading requirements because it is a bare legal conclusion") *Gonzalez v. Spears Holdings, Inc.*  2009 WL 2391233, *2 (S.D.

Fla. July 31, 2009)(striking defenses of waiver and estoppel).

Thus, Defendant's Third, Fourth, Fourteenth, and Seventeenth Affirmative Defenses are both legally invalid and factually unsupportable, rendering the defenses frivolous and defective under basic pleading standards. They should be stricken.

### (d)   Eighth Affirmative Defense-Defendant's actions were justified by legitimate, non-discriminatory, and non-retaliatory reasons

McPherson's Eighth affirmative defense is as follows:

> All actions by Defendant are based upon legitimate, non-retaliatory, and non-discriminatory reasons.

(Doc. 9, p.6).

Defendant denied the allegations in plaintiff's complaint that it deprived Doe of equal employment opportunities because of his sex and retaliated against him after he complained about the conduct of Defendant's employees. (Doc. 8, ¶ ¶ 18-20; Doc. 9, ¶ ¶ 18-20). Where a defendant denies plaintiff's allegations of alleged discrimination in employment, an affirmative defense that defendant acted for legitimate, non-discriminatory reasons is both unnecessary and inappropriate because the assertion is already put in issue by defendant's denial in its answer. *Renalds v. S.R.G. Restaurant Group,* 119 F.Supp.2d 800, 804 (N.D. Ill. 2000). "A defense is not an affirmative defense where it merely negates an element of the plaintiff's prima facie case.'" *Etienne v. Wal-Mart Stores*, 197 F.R.D. 217, 220-

221 (D.Conn. 2000), (internal citations and quotations are omitted). Accordingly, summary judgment is appropriate for disposing of this affirmative defense.

### (e) Ninth, Tenth, and Eleventh Affirmative Defenses-Faragher/Ellerth Affirmative Defense

McPherson's Ninth, Tenth, and Eleventh Affirmative Defenses read as follows:

• **Ninth**: "Defendant exercised reasonable care to prevent and correct promptly any alleged sexually harassing manner." (Doc. 9, p. 7).

• **Tenth**: "Doe failed to take advantage of any preventive or corrective opportunities provided by the Defendant to report the alleged harassment or to otherwise avoid harm." (Doc. 9, p. 7).

• **Eleventh**: "Defendant adopts all defenses made available to it under the decisions rendered by the United States Supreme Court in <u>Faragher v. City of Boca Raton</u>, 118 S. Ct. 2275 (1998) and <u>Burlington Industries, Inc. v. Ellerth</u>, 118 S. Ct. 2257 (1998)." (Doc. 9, p. 7).

Defendant's Ninth, Tenth, and Eleventh Affirmative Defenses, by the nature of the defenses and the citations to *Faragher*, *supra*, and *Burlington*, *supra*, are directed solely at the Commission's hostile work environment claim. Specifically, the defenses address the fifth prong of the claim, the basis for employer liability.

### (1) Sufficient Evidence: *Prima Facie* Case: Hostile Work Environment

The Commission meets the prima facie elements of a sexually hostile work environment claim. Doe: (1) belongs to a protected group; (2) was subjected to unwelcome sexual harassment; (3) the harassment was based upon the employee's sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and

conditions of employment and create a discriminatorily abusive working environment; and (5) the sexual harassment is imputable to the employer. *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987).

Eleventh Circuit precedent mandates that courts consider "the totality of the circumstances" in assessing the severity or pervasiveness of harassment. *See, e.g., Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1277 (11th Cir. 2002). Critically, **"**The conduct is considered cumulatively instead of in isolation.**"** *Reeves,* 395 Fed. Appx. 544, 546. The U.S. Supreme Court has cautioned that harassment need not be shown to be so extreme that it produces tangible effects on job performance to be actionable. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 22 (1993).

Defendant admits that Tipton, Mike, and Painter had supervisory authority over Doe. Painter and Mike engaged in relentless and vile sexual comments and conduct, solely targeted at Doe.

### (2)    Employer Liability

The Commission establishes employer liability because Mike and Painter, key supervisors, with significant power over Doe, took the sexually offensive actions. "[A]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca*

*Raton,* 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742

(1998). Defendant admits Mike and Painter have supervisory authority over Doe.

Doe reported directly to Lamar Tipton, Renew Blend Supervisor.[165] Tipton

reported to Mike, Assistant Operations Manager. Mike reported to Painter, Facility

Operations Manager.[166] Painter reported to Bedford, Vice President of Operations.

[167]

Tipton, Mike, and Painter worked in the warehouse with Doe. **Tipton,**

**Mike, and Painter held higher positions of authority than Doe and had the**

**ability to direct Doe to perform certain duties**.[168] Tipton had daily contact with

Doe.[169] Tipton had the authority to issue Employee Counseling Reports to Doe,

including disciplinary reports. [170] Mike and Painter had the authority to: (a) take

disciplinary action against Doe; and (b) direct Tipton to take disciplinary action

against Doe.[171] [172]

>              **(3)   Summary Judgment Proper for Commission because**
>                    **Defendant is not Entitled to Affirmative Defense**

An employer may avoid vicarious liability by raising as an affirmative

defense that it: (1) exercised reasonable care to prevent **and** correct promptly any

---

[165]   Ex. 6   [Dep. (Tipton) 20:4-9]
[166]   Ex. 7   [Dep. (Mike)13:19-14:16; 15:22-16:1-9]
[167]   Ex. 3   [30(b)(6) Dep. (Chapman) 30:2-6]
[168]   Ex. 3   [30(b)(6) Dep. (Chapman) 31:20-23; 32:1-3]
[169]   Ex. 6   [Dep. (Tipton)  44:17-20]
[170]   Ex. 6   [Dep. (Tipton)  58:6-12]
[171]   Ex. 7   [Dep. (Mike)  15:19-16:3]
[172]   Ex. 8   [Dep. (Painter) 18:10-20]

harassing behavior, **and** (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher, supra,* 524 U.S. at 807, 809. This is known as the *Faragher* defense. Critically, "**Both elements [of the affirmative defense] must be satisfied ... and the defendant bears the burden of proof on both elements**." *Frederick v. Sprint/United Mgmt. Co.,* 246 F.3d 1305, 1313 (11th Cir. 2001).

> ### (1)    First Element of Defense: Defendant Did Not Exercise Reasonable Care to Prevent and Correct the Hostile Work Environment

Here, Defendant's supervisors and managers knew of the conduct of Painter and Mike, and did not exercise reasonable care to prevent **and** correct promptly such harassing behavior, but rather condoned it, and/or participated in such unlawful conduct. Defendant is required to satisfy both prongs of this first element of the affirmative defense: (a) exercise reasonable care to prevent harassment; and (b) correct promptly harassing behavior. Defendant cannot satisfy either of the two required prongs of the first element of this defense**. Significantly, the Defendant itself was engaging in the creation and perpetuation because Mike and Painter, Managers and Doe's Supervisors, were the harassers**. Defendant found their harassment of Doe constituted **unlawful discrimination** and warranted a verbal counseling.

As a matter of policy, the *Faragher* defense, upon which Defendant has the burden of proof, cannot permit Defendant to have two managers and supervisors, Mike and Painter, engage in open and continuous harassment, and thereafter, find such harassment to be unlawful discrimination; and subsequently retain the harassers and discharge Doe, the target of the harassment.

**Mike admits Doe complained to Mike regarding the comments made to him.** [173] Mike understood Doe's complaint: (a) related to comments directly against Doe; and (b) included Mike's and Painter's comments to Doe.[174] Doe complained to Mike that the comments needed to stop, Doe was tired of them, and it was getting old.[175]

**Critically, Mike, upon receiving Doe's complaints, did not report such complaints to Chapman.**[176] Defendant's policy provides:

> Any supervisor or manager who becomes aware of possible sexual or other unlawful harassment should promptly advise the Human Resources Manager or any member of management who will handle the matter in a timely and confidential manner.[177]

Mike's failure to report the complaints of harassment violates Defendant's policy and deprives Defendant of the *Faragher* defense because this defense requires an employer to require all supervisors to report all complaints of

---

[173]   Ex. 7   [Dep. (Mike) 45:5-8]
[174]   Ex. 7   [Dep. (Mike) 46:13-22]
[175]   Ex. 7   [Dep. (Mike) 70:11-17]
[176]   Ex. 7   [Dep. (Mike) 77:2-8]
[177]   Ex. 1C

harassment to appropriate officials. *Wilson v. Tulsa Junior College*, 164 F.3d 534, 541 (10th Cir. 1998).

Defendant may attempt to rest its defense on **the mere existence,** and claimed dissemination, of an employee handbook and a written sexual harassment policy containing complaint reporting requirements. Defendant's position is unjustified.  The record is clear that no matter what policy or complaint process Defendant had or disseminated, it was ineffective. The conduct of Painter and Mike was open and notorious, and Defendant, was aware of it, acquiesced to it, and/or participated in it.

Applicable legal precedent addressing the standards for an adequate anti-harassment policy further supports the EEOC's position. Not every harassment policy will demonstrate reasonable care to prevent a sexually hostile environment. To establish that it took reasonable steps to prevent harassment, the employer is required to show that the policy: (1) was effectively published, (2) contained reasonable complaint procedures, and (3) it contained no other fatal defect. *See Faragher,* 524 U.S. at 808 [denying an employer the affirmative defense because the employer had "entirely failed to disseminate its [policies]," the policies did not contain reasonable complaint procedures, and because the employer failed to supervise management personnel. *Frederick v. Sprint/United Management Co*. 246 F.3d at 1313 -1314.

Defendant's policy was defective because it did not contain an impartial, reasonable complaint procedure. The policy provided that a person must complain to a supervisor or to Human Resources. Based on Defendant's facts, Doe was forced to complain to Mike, a harasser who ignored the complaint, and thereafter, to Chapman, whose adverse actions toward Doe establish her lack of impartiality.

**Defendant's policy was neither effectively published nor was it without a fatal defect because Defendant did not train the key supervisors and managers concerning the harassment policy.** *Ellison v. Brady*, 924 F.2d 872, 883 (9th Cir. 1991) ["In order to avoid the loss of well-intentioned productive employees, employers must educate and sensitize their workforce"]; *Lancaster v. Sheffler Enterprises,* 19 F.Supp.2d 1000, 1003 (W.D.Mo., 1998) [Simply forcing all new employees to sign a policy does not constitute "reasonable care." The employer must take reasonable steps in preventing, correcting, and enforcing the policy. Reasonableness requires more than issuing a policy.]

Defendant never explained to Tipton: (a) the type of conduct that constitutes sexual harassment when a man's conduct is asserted to be offensive against another man;[178] or (b) the meaning of equal employment opportunity (EEO) retaliation.[179] Also, Tipton does "not remember" receiving any training as to how to train other

---

[178]   Ex. 6    [Dep. (Tipton)  19:5-10]
[179]   Ex. 6    [Dep. (Tipton)  19:11-14]

employees concerning unlawful sex harassment involving a male's conduct against another male.[180] Tipton never received training on how to: (a) resolve an internal EEO complaint;[181] (b) preserve evidence;[182] (c) maintain an investigation file for an EEO complaint;[183] or (d) respond to an EEOC complaint.[184]

Mike, as Assistant Operations Manager, "does not know" if had received any training as to: (a) the definition of unlawful sexual harassment when it involves a man engaging in offensive conduct toward another man; (b) the procedure for responding to sexual harassment complaints involving a man's offensive conduct toward another man; or (c) how to preserve evidence when an employee files an internal complaint of unlawful sexual harassment involving a male's conduct toward another male.[185] Concerning internal complaints of sexual harassment involving offensive conduct by a man toward another man, Mike did not receive any training how to respond to such complaints.[186]  In addition, Mike never received any training as to how to investigate effectively a sexual harassment or retaliation complaint.[187] Mike did not train any of the employees he supervised as to the: (a) definition of unlawful harassment involving a male against another

[180]   Ex. 6   [Dep. (Tipton)  17:2-7]
[181]   Ex. 6   [Dep. (Tipton)  18:6-7]
[182]   Ex. 6   [Dep. (Tipton)  18:16-19]
[183]   Ex. 6   [Dep. (Tipton)  18:20-19:1]
[184]   Ex. 6   [Dep. (Tipton)  19:2-4]
[185]   Ex. 7   [Dep. (Mike)   17:22-18:5; 18:14-20; 18:21-19:4]
[186]   Ex. 7   [Dep. (Mike)   18:6-13]
[187]   Ex. 7   [Dep. (Mike)   21:10-13]

male; (b) how to respond to an internal complaint of sexual harassment involving a male against a male; (c) how to respond to an internal employment of equal employment opportunity retaliation. [188] Moreover, Mike never provided any training to Lamar Tipton concerning unlawful sexual harassment or equal employment opportunity retaliation.[189] Significantly, prior to Doe's discharge in 2008: (a) Mike's training concerning sexual harassment and retaliation consisted of receiving an employee handbook from Defendant in 2005; and (b) Mike did not attend any meetings or visit with anyone for training on sexual harassment or retaliation other than receiving the handbook.[190]

Critically, Painter did not have any understanding as to the meaning of Title VII.[191] Painter received the Defendant's Employee Handbook dated January 1, 2005; however, he never received any training concerning the Handbook.[192] In addition, concerning Defendant's Sexual Harassment Policy, Painter initially testified that because there was not any acknowledgment signed by him that he received the policy, it is possible he did not receive the policy.[193] Subsequently, Painter testified he received the policy but admitted he has no idea when he

---

[188]    Ex. 7   [Dep. (Mike)   19:17-22; 20:3-14]
[189]    Ex. 7   [Dep. (Mike)   24:6-11]
[190]    Ex. 7   [Dep. (Mike)   23:7-19]
[191]    Ex. 8   [Dep. (Painter)  31:4-6]
[192]    Ex. 8   [Dep. (Painter)  34:8-23; 85:1-11]
[193]    Ex. 7   [Dep. (Painter), 87:10-14; 89:1-9]

received it or when he read the policy.[194] Painter did not provide any training to employees under his supervision concerning: (a) sexual harassment or a hostile work environment based on sex involving offensive conduct by a male toward another male; or (b) EEO retaliation.[195]

At the time of Doe's complaints to Chapman concerning Mike and Painter, Defendant did not have any knowledge that Mike and/or Painter ever received any training in same sex discrimination or same sex harassment.[196] Prior to Doe's complaints to Chapman, Defendant does not have any knowledge that during the tenure of Chapman, since June 1, 2007, Lamar Tipton, Mike, or Painter had been given training as to: (a) the definition of unlawful same sex harassment; (b) how to develop a comprehensive anti-harassment same-sex policy; (c) how to conduct an effective investigation of a same sex harassment charge; (d) how to resolve a complaint of same-sex harassment; (e) preserving evidence  and the investigation file;[197] (f) how to respond to an administrative complaint of same-sex harassment; or (g) any training as to how to train  other employees concerning same-sex harassment charges.[198] Furthermore, Defendant, via Chapman, did not give any same-sex discrimination or harassment training to Defendant's employees prior to

---

[194]   Ex. 7   [Dep. (Painter), 89:22-23; 90:1; 91:6-9]
[195]   Ex. 7   [Dep. (Painter), 33:5-17]
[196]   Ex. 3   [30(b)(6) Dep. (Chapman) 112:7-17]
[197]   Ex. 3   [30(b)(6) Dep. (Chapman) 127-18-23; 128:1-23; 129:1-17]
[198]   Ex. 3   [30(b)(6) Dep. (Chapman) 130:1-11]

date of Doe's discharge.[199] Defendant did not provide Tipton, Mike, and Painter any training concerning equal employment opportunity retaliation prior to June, 2008, approximately (4) four months after Doe's discharge. [200]

Finally, Defendant is required to show that it acted reasonably promptly on the victim's complaint once it received notice.  Given the ineffective nature of the policy at issue, and the fact that Mike and Painter were Managers and Supervisors, Defendant was on "notice" when the harassment began because its own officials were engaging in the prohibited conduct.  *Miller v. Kenworth of Dothan, Inc.*  277 F.3d 1269, 1279-1280 (11th Cir. 2002).

Knowledge on the part of the very persons (supervisors and managers) designated to receive complaints likewise put Defendant on notice.  *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000), citing *Coates v. Sundor Brands, Inc.,* 164 F.3d 1361 (11th Cir.1999), states:

> [W]e held that if an employer has a company policy specifically designating the person or persons to whom an employee should report instances of suspected sexual harassment, once the employee complains to the designated person or persons, the employer is deemed to have actual notice of the harassment. *See id.* at 1364. With such a policy, the employer "itself answered the question of when it would be deemed to have notice of the harassment sufficient to obligate it or its agents to take prompt and appropriate remedial measures."

---

[199]   Ex. 3   [30(b)(6) Dep. (Chapman) 23:7-19]
[200]   Ex. 3   [30(b)(6) Dep. (Chapman) 133:18-23;134:1-15]

Once notice is established, the employer must take immediate and appropriate corrective action. " *Watson v. Blue Circle,* Inc., 324 F.3d 1252, 1261 (11th Cir. 2003). *See also Frederick,* 246 F.3d at 1314; *Minix v. Jeld–Wen, Inc.,* 237 Fed. Appx. 578 (11th Cir. 2007).

Defendant's response and policy were inadequate because Defendant did not provide a reasonable and effective complaint procedure and included the fatal defect of being ineffective and ignored by Managers and Supervisors., *Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1279-1280 (11th Cir. 2002) holds that a policy must be found ineffective when company practice indicates a tolerance towards harassment or discrimination.

### (2) Second Element of Defense: Doe Followed Policy and Acted Reasonably to Avoid Harm

The second required element of the *Faragher/Ellerth* affirmative defense requires the employer to show that the complaining employee unreasonably failed to take advantage of the employer's complaint procedures or otherwise avoid harm. *Faragher,* 524 U.S. at 807; *Ellerth,* 524 U.S. at 765. As previously stated, Doe complained to Mike, which included comments by Mike and Painter. Mike violated Defendant's policy by not reporting this complaint to Chapman. Thereafter, Doe complained to Chapman. The result of these events resulted in a series of linked adverse events taken against Doe, resulting in his discharge without any progressive discipline. In contrast, Mike and Painter were merely

verbally counseled, despite having engaged in admitted unlawful discrimination against Doe. Mike and Painter did not receive any Employee Counseling Report for their treatment of Doe or failure to report Doe's complaints to Chapman, but rather continued their careers with Defendant.

Therefore, Defendant can prove no set of facts to establish any prong of the *Faragher* defense, and summary judgment on these defenses should be granted for the Commission pursuant to Rule 56.

### (f)   *Twelfth Affirmative Defense- Misconduct Occurred Outside Scope of Doe's Employment*

McPherson's Twelfth Defense is the assertion that "Defendant is not liable for Doe's claims because any alleged misconduct occurred outside of the scope of his employment." Apparently McPherson asserts that the harassment and retaliation against Doe occurred outside the scope of Doe's employment. Summary judgment is due to be granted as to this defense for two reasons.

First, McPherson has neither alleged nor produced any evidence that the harassment and retaliation Doe suffered occurred outside the scope of Doe's employment. To the contrary, the undisputed evidence in this case shows that the harassment occurred while Doe was at work, and during work hours, and the retaliation alleged and shown by the Commission through evidence indisputably concerns employment – related retaliation, namely requiring him to undergo drug

testing, sending him home on unpaid leave, moving him to a less favorable job assignments, removing his title, and terminating him.

Secondly, McPherson's defense is completely devoid of any facts supporting it, and fails to give the Commission the specificity or factual particularity required to give the Commission fair notice of the defense, making the defense insufficient.

### (g)   *Thirteenth Affirmative Defense-Defendant Not Aware of Misconduct*

McPherson's Thirteenth Defense is the bald assertion that "Defendant cannot be liable for alleged actions of which it was not aware." This defense is both insufficiently pled and legally invalid.

At the outset, Defendant is a corporation, which can only act through its agents. Defendant's agents who harassed and retaliated against Doe were obviously aware of their own actions. Thus, the defense is contradictory and self – defeating. Additionally, the defense is legally invalid because it is based upon a misunderstanding of the principles established by the United States Supreme Court in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998) for employer liability for discriminatory acts by its agents. In both *Faragher* and *Ellerth*, the United States Supreme Court held that an employer is vicariously liable for unlawful discriminatory acts by a supervisor, subject to an affirmative defense when the unlawful acts have not culminated in tangible adverse employment action being taken. 524 U.S. at 765;

524 U.S. at 807.  McPherson's assertion that it cannot be liable for actions of which it was not aware is completely contrary to this holding.

In this case, the Commission has alleged that Doe was terminated. Termination is indisputably an adverse employment action. The affirmative defense cannot apply in that situation, so McPherson's asserted defense that it can never be vicariously liable if it was not aware of the harassment or retaliation is legally incorrect.  Finally, whether Doe was harassed by supervisors or co-workers, a careful reading of Faragher and *Ellerth* reveals that negligence of the employer remains a viable basis for employer liability. In other words, an employer can still be held liable for unlawful discriminatory acts of its employees where the employer knew or *should have known* of the conduct and fails to take proper remedial action. As the court stated in *Ellerth*,

> Thus, … An employer can be liable, nonetheless, where its
> own negligence is a cause of the harassment. An employer
> is liable with respect to sexual harassment if it knew or should
> have known about the conduct and fails to stop it. Negligence
> sets a minimum standard for employer liability under Title VII….

524 U.S. at 759. In *Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417 (11th Cir. 1999), the Eleventh Circuit recognized that after *Faragher* and *Ellerth* an employer can still be liable under a negligence standard. Other circuits have agreed. *See Sharp v. City of Houston,* 164 F. 3d 923 (5th Cir. 1999); *Wright – Simmons v. City of Oklahoma City,* 155 F.3d 1264 (10th Cir. 1998). Thus, contrary

to McPherson's asserted defense, McPherson can be liable for actions it did not know about, if it should have known about them in the exercise of reasonable care.

> ### (h)   Nineteenth, Twentieth, and Twenty-Third Affirmative Defenses-No Causal Connection between McPherson Conduct and Damages Suffered

In *In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988), the Eleventh Circuit held that "[a] defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." If the assertion is actually a denial rather than an affirmative defense and the same was already denied in the answer to the complaint, the defense may be stricken as redundant. *Wiemer v. Felderbaum & Associates, P.A.*, 2008 WL 299016, * 2 (S.D. Fla. Feb. 1, 2008). Defendant's Nineteenth, Twentieth, and Twenty-Third Defenses are not proper defenses as they merely deny the Commission's allegation that Defendant damaged Doe.

Additionally, the defenses lack factual specificity. The Courts in *Racick v. Dominion Law Associates,* 270 F.R.D. 228, 234-35 (E.D. N.C. 2010) and *Francisco v. Verizon South, Inc.,* 2010 WL 2990159, at *8 (E.D. Va. July 29, 2010) found similar non-specific proximate cause defenses to be insufficient. The Court in *Racick* called them "boilerplate affirmative defenses, with no assertion of any facts" that "fail to meet the notice pleading standard." 236 F.R.D. at 236. The Court in *Francisco* concluded these defenses are "too conclusory to provide fair

notice to the plaintiff, and … fail [] to contain a factual basis entitling it to be assumed true."   2010 WL 2990159, at *8.

Defendant's Nineteenth, Twentieth, and Twenty-Third Defenses should be stricken as frivolous, unnecessary, and improperly pled as a matter of law.

### (i) Twenty-First Defense- Failure to Mitigate Damages

McPherson's Twenty-First Defense is an assertion that "Doe has failed to adequately mitigate his damages. To the extent Doe mitigated his damages, Defendant is entitled to a set-off." The Commission does not dispute that McPherson, like any defendant, entitled to a set-off for Doe's interim earnings. The Commission is entitled to summary judgment, however, on McPherson's allegation of failure to adequately mitigate.

The failure to mitigate damages is an affirmative defense upon which the defendant has the burden of proof.   *Brown v. Alabama Department of Transportation,* 597 F.3d 1160, 1183 (11th Cir. 2010); *Munoz v. Oceanside Resorts, Inc.,* 223 F.3d 1340, 1347 (11 Cir. 2000); *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1527 (11th Cir. 1991); *Nord v. United States Steel Corporation,* 758 F.2d 1462, 1470 (11th Cir. 1985).

The burden is on the defendant to show the plaintiff did not make reasonable efforts to mitigate damages by obtaining substantially equivalent employment.

Specifically, the defendant must show that comparable work was available, and the plaintiff did not seek it out. *Weaver v. Casa Gallardo, Inc., supra,* at 1527.

A plaintiff need not be successful in mitigating damages; only a reasonable, good-faith effort to mitigate is required. *Walters v. City of Atlanta,* 803 F.2d 1135 (11th Cir. 1986)(citing *Hayes v. Shelby Memorial Hospital,* 546 F. Supp. 259, 266 (N.D. Ala. 1982), *aff'd,* 726 F.2d 1543, 1554 (11th Cir. 1984)).

Based on the record in this case, no reasonable juror could find a failure to mitigate damages. There is no evidence that Doe failed to seek out comparable employment, and no evidence that any comparable work was available. Defendant has wholly failed to show that comparable work was available and Doe failed to seek it out.

McPherson's Twenty-First Affirmative Defense fails as a matter of law, and summary judgment is appropriate to dispose of it. Additionally, Defendant has identified no witness or facts in its disclosures or in discovery supporting such a defense, making summary judgment appropriate.

### (j)    *Twenty-Second Defense-Failure to Allege Malice or Reckless Indifference*

McPherson's Twenty-Second Defense states, "An award of punitive damages is not available against this Defendant due to the Plaintiff's or Doe's failure to allege that acts were taken with "malice and/or reckless indifference." This defense is factually incorrect. Paragraph 9 of Plaintiff's Amended Complaint

(Doc. 8, p. 3) in fact alleges that the unlawful employment practices complained of "were done with malice or with reckless indifference to the federally protected rights of Doe."[201] Thus, McPherson's Twenty-Second Defense fails as a matter of law and summary judgment as to this defense is appropriate.

### (k)     Twenty-Fourth Defense-Punitive Damages Standard

McPherson's Twenty-Fourth Defense states, "Doe or the EEOC cannot recover punitive damages, because Defendant did not know or believe any of its alleged actions may have been in violation of federal law."

This defense is legally invalid because it is based on an erroneous understanding of the standard for recovering punitive damages in a Title VII case. As stated previously, the Civil Rights Act of 1991, by its plain terms, provides that punitive damages may be awarded where a defendant acted with reckless indifference.  *See* 42 U.S.C. § 1981a(b)(1). A Defendant's knowledge or belief that it is acting in violation of federal law is not required; what is required is only that the Defendant "discriminate in the face of a *perceived risk* that its actions will violate federal law…." *Kolstad v. American Dental Association,* 527 U.S. 526, 536 (1999)(emphasis added). Defendant's Twenty-Fourth Defense is legally invalid. Thus, Plaintiff is entitled to summary judgment on this defense as a matter of law.

---

[201] The Civil Rights Act of 1991 provides that punitive damages are recoverable where the Defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

### (l) Twenty-Seventh Defense-"Equal Opportunity Harasser" Defense

McPherson's Twenty-Seventh Defense is the cryptic, equivocal, bare-bones statement that "Defendant pleads the 'equal opportunity harasser' defense, to the extent applicable." Defendant does not affirmatively allege that any such defense applies in this case, but instead pleads this defense "to the extent applicable."

Defendant failed to articulate this defense with any particularity, let alone with the sufficiency to give the Commission fair notice of the defense claimed. Defendant has not identified any witness or facts in its disclosures or in discovery supporting such a defense. Accordingly, McPherson's Twenty-Seventh Defense fails as a matter of law, and summary judgment is appropriate to dispose of it.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is due to be granted.

This the 15th day of June, 2012.

Respectfully submitted,

C. EMANUEL SMITH
(MS Bar #7473)
Regional Attorney

/s/ Julie Bean
JULIE BEAN
Supervisory Trial Attorney
(DC Bar #433292)

/s/ Steven L. Murray
STEVEN L. MURRAY
Senior Trial Attorney
D. C. Bar # 379955

/s/  Gerald L. Miller
GERALD L. MILLER
Senior Trial Attorney
(AL ASB-1454-E52G)


EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, AL 35205
Telephone: (205) 212-2045


## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2012, I filed the foregoing with the Clerk of

Court using the CM/ECF system which will electronically send notification of the

filing to all attorneys of record.


 /s/ Steven L. Murray
Steven L. Murray